ALBANY,<br>Oct. 1827.<br><br>Clark<br>v.<br>Pinney.

---

## CLARK and CLARK *against* PINNEY.

ON error to the C. P. of the county of Onondaga.

The action in the court below was assumpsit, brought in May, 1821, by Pinney against Clark and Clark, on the *following note: " We promise, for value received, to pay John Pinney, one hundred and fifty dollars, in good first quality common salt, at one dollar and fifty cents per barrel, salt to be subject to duties ; said salt to be delivered at Salina, in good boating order, on the fifteeenth of April next.

The 9th of August, 1820.

JAMES CLARK,<br>WILLIAM CLARK."

Plea, the general issue, with notice that the defendants below would show in their defence a tender at the place where, and the day after the note fell due, the 15th of April being Sunday.

The cause was tried on the 4th of May, 1825.

After giving the note in evidence, the plaintiff below offered to prove the value of salt per barrel at Salina in the fall of 1822, claiming that he was entitled to recover the highest price which salt bore between the time when the time, the measure of damages, in an action by the vendee, is the difference between the contract price and the value of the chattels when they should be delivered by the contract.

Where a con tract is to de liver Salina salt in barrels, such barrels as [*682] are directed by the statute (1 R. L. 249, s 3,) are to be understood as in tended.

But on the question whether barrels conformable to the contract have been tendered, there need not be positive proof that they conformed to the statute. The jury may infer this from the testimony.

Where there is a default on a contract to sell and deliver chattels, the vendee to pay at the

But where the price or consideration is paid in advance, the vendee is not confined, in measuring his damages, to the value of the articles, at the time when they should have been delivered: but may, if he bring his suit in a reasonable time, recover according to the highest price at any time between the period for delivery and the day of trial; especially where the chattels are intended by the vendee for the purposes of trade. (*E. g.* an action on a note promising to deliver, acknowledging value received.)

How it would be if the chattels were intended for the private use of the vendee? *Quære*.

If the suit be delayed by attempts to compromise, *semb.* the damages should be according to the value, when the suit is commenced.

ALBANY,
Oct. 1827.
———
Clark
v.
Pinney.

salt became due, and the day of trial. This was objected to by the defendants below; but the evidence was received; and the defendants below excepted.

The defendants below then produced witnesses, who testified that, on the 16th of April, 1821, (it being admitted that the 15th was Sunday,) they tendered to the plaintiff below, at Salina, on the note, 100 barrels of good first quality salt, being ash barrels, with 12 hoops and nailed, in good boating order, each barrel containing, in the opinion of the witnesses, 5 bushels; but the salt was not weighed. Salt was then worth 75 cents per bushel at Salina. The witnesses of the plaintiff below represented the barrels as of the common size, with 19 inch heads; as not water tight; that they were middling good, and had been exposed to the sun, warped, and some of the heads sprung; and not such barrels as they would send on to the upper lakes. The evidence is more particularly stated in the opinion of this court.

The court below charged the jury, that the plaintiff below was entitled to recover according to the measure of damages for which he had contended, if entitled to recover [*683] at all; and that to make out the defence of tender, the *defendants below were bound to prove that the salt was put up in barrels of the dimensions and description prescribed in the 3d section of the act relating to the salt springs in the county of Onondaga, passed June 15th, 1812; and that they contained 4 bushels each. Verdict for the plaintiff below for $206 64. The defendants below excepted to this charge; and the cause came here on a bill of exceptions containing the points above stated.

*B. D. Noxon,* for the plaintiff in error. Where a note is payable in specific articles, the value of the articles at the time they should have been paid, is the criterion of damages, and not the value of them at a subsequent period. There can be no doubt that this is the general rule, which is perfectly well settled both in England and in this country; and has been so for a long time. (*Marshall* v. *Campbell*, 1 Yeates' Rep. 36; *Douglass* v. *M'Allister*, 3 Cranch,

298; *Dutch* v. *Warren*, 2 Burr. 1010, 11; *Gray* v. *The Portland Bank*, 3 Mass. Rep. 390; *Forrest* v. *Elwes*, 4 Ves. 492; *Groves* v. *Graves*, 1 Wash. 1; *Reynolds* v. *Waller's heir*, id. 164; *Davis* v. *The Ex'rs of Richardson*, 1 Bay, 105; *Atkinson* v. *Ex'rs of Scott*, id. 307, 309; *Wigg* v. *The Ex'rs of Garden*, id. 357; 1 Ev. Poth. 91, No. 161; Chip. on Contr. 121; *Sanders* v. *Kentish*, 8 T. R. 162; *Bush* v. *Canfield*, 2 Con. Rep. N. S. 485; *Gainsford* v. *Carroll*, 2 B. & C. 624; *Cortelyou* v. *Lansing*, 2 Cain. Cas. Err. 216; *Shepherd* v. *Hampton*, 3 Wheat. 200; *Kennedy* v. *Strong*, 14 John. 128; *Morley* v. *Bird*, 3 Ves. 628, 632.)(*a*)

In the analagous case of a covenant for quiet enjoyment or seisin of land, the rule is the same; that is to say, the *enhanced value of the land is not allowed in case of a breach. *Pitcher* v. *Livingston*, (4 John, 1, 15.)

[*684]

The rule contended for by the defendants in error, would make this class of contracts usurious. A rise in value raises the damages; but it will not be pretended that a fall is to mitigate them. (*Barnard* v. *Young*, 17 Ves. 44. *White* v. *Wright*, 3 B. & C. 273.) *Shepherd* v. *Johnson*, (2 East, 211,) upon which *West* v. *Wentworth*, (3 Cowen, 82,) was decided, is certainly not law. We admit these cases are against us; but they are opposed to the uniform current of English and

(*a*) For the same general rule, *vid.* also *Wells* v. *Abernethy*, (5 Con. Rep. N. S. 228;) *Edgar* v. *Boies*, (11 Serg. & Rawle, 445, 452.)

But not one of the American cases, cited from the state courts, goes professedly upon the distinction between the rule of damages where the consideration is executed, and where it is executory. In *Wells* v. *Abernethy*, the consideration was executed; and the contract was to convey land.

The measure of damages was fixed at the value of the land, when the deed should have been executed. Hosmer, C. J., in considering the English stock cases, supposes that they follow a court of equity, which decrees specific execution of stock contracts. He questions these cases as anomalous; and declares that he shall stand ready, on a proper occasion, to overrule them.

He does not advert to *Gainsford* v. *Carroll*, in the same court which decided *Shepherd* v. *Johnson*, where they were explained as going on the execution of the consideration, and the withholding it by the vendor, so as to deprive the vendee of all advantage in market. This seems to be a plain, substantial and equitable distinction; and one which reconciles all the cases on this subject.

American authority; and we hope they will be re-consid-ered. In *Shepherd* v. *Johnson*, the premises of the court are wrong. Grose, J., says the defendant should tender after the day, if he mean to avoid the consequence of a rise in the market. This violates all our ideas of the law of tender. It must be on the very day; and can in no case be afterwards. (3 B. & P. 14.) Another judge reasons from a specific performance in equity. This is a very common case in a contract to convey land; but has never been holden an argument in an action at law to raise the damages beyond the value at the day of performance, with interest.

The court also erred in their charge as to the tender. (1 R. L. 249.)

*S. Beardsley*, contra. To be a compliance with the contract, and constitute a good tender, clearly the salt must have been put up according to the statute. (16 John. 233, and the cases there cited.)

As to the measure of damages, it is denied, that the point presented by this case, has ever been decided in *favor of the plaintiffs in error, by any case which had been, or can be found. On the contrary, there are several cases, which are against him. There is no doubt about the general rule of damages. It is to take the value at the day; but that must be where the consideration is unpaid. Here the value is admitted to have been received; and it would be unjust to allow the plaintiffs in error to withhold the article; and at the same time the consideration paid. In such a case, the vendee cannot avail himself of the market. His means are withheld; and it presents a case of special dam age, which, many of the authorities cited on the other side agree, forms an exception to the general rule. *Wentworth* v. *Beach*, decided by this court, is in point; and, if it is to be re-considered, will be found clearly supported, not only by sound principle, but by the authority of adjudged cases. The distinction for which we contend, was no doubt the true basis of the decision in *Shepherd* v. *Johnson*, (followed by *McArthur* v. *Seaforth*, in 2 Taunton, 259,) which has

[*685]

been questioned on the other side; but it will be fou..d expressly laid down in recent English and American authorities. (*Gainsford* v. *Carroll*, 3 B. & C. 624; *Shepherd* v. *Hampton*, 3 Wheat. 200, 204, per Marshall, Ch. J.)

ALBANY,
Oct. 1827.

Clark
v.
Pinney.

*Curia*, per SUTHERLAND, J.  Two questions arise upon the exceptions taken to the decisions and charge of the court:

1. As to the sufficiency of the tender proved; and 2. If the tender was not sufficient, as to the rule of damages.

The court decided that the plaintiff was entitled to recover the highest price which salt sold for at Salina, per barrel, between the time when the note became due, and the day of trial.  The plaintiffs in error contend that the damages are to be limited to the value of the salt at the time when the note fell due, with interest.

As to the tender.  The court charged the jury, that in order to make out a tender or payment of the salt, the defendants below were bound to prove that the barrels were of the dimensions and description described in the 3d section *of the act relating to the salt springs, (1 R. L. 249,) and that they contained five bushels each.  That section provides, that all salt manufactured at those springs, which shall be put up in casks, shall be packed in good casks, water tight, well hooped with twelve hoops, three on each head, and three on each bilge; which casks shall be thirty inches long, and the diameter of each head nineteen inches. There was no direct evidence as to the length of the barrels.  In other respects, the weight of evidence, I think, showed them to be conformable to the statute; and the fair inference from all the testimony is, that they were of the proper length.  They were shown to have had the requisite number of hoops, and the proper sized heads; to have been common sized barrels; and to have been good and tight.  Some of the defendant's witnesses, it is true, said they were not tight and in good boatable order; that the heads were warped.  But they saw them several weeks after they were turned out to the plaintiffs below, and after they had been exposed to the weather; and the proba-

[*686]

bility from the evidence is, that they may have been in-
jured subsequent to the tender or delivery. If the jury
understood from the charge, that the defendants must give
positive evidence that the barrels conformed in every re-
spect to the requirements of the statute, and that they were
not at liberty to infer such conformity from the testimony
given in the case, I should think the charge misled them:
but the principle laid down by the court was, in the ab-
stract, undoubtedly correct; that in a contract for the de-
livery of salt in barrels, such barrels as are directed by the
statute to be used in packing salt, are intended; and I do
not know that we are at liberty to say that the jury, under
the circumstances of this case, were misled by it in this re-
spect. But the statute says nothing about the number of
bushels which the barrels must hold. The court, therefore,
erred in charging the jury, that the barrels must contain
five bushels each. As a matter of calculation from the size
of the barrels prescribed in the act, it may be that they
[*687]         would contain five bushels: but the jury might *and pro-
bably did understand, that the fact must be proved. On
the whole, I think the charge on this point, was not so ex-
plicit as it ought to have been; and that the jury may
have been misled by it. The judgment ought, therefore,
to be reversed on that ground; and the question again
submitted to a jury.

The question as to the rule of damages, however, is the
most important.

The principle adopted by the court below is in conformity
to the decision of this court in *West* v. *Wentworth and
Beach*, (3 Cowen, 82.) But, as that case was slightly ar-
gued, and the question is one of very considerable interest,
we permitted it again to be discussed; and are now pre-
pared to reconsider, and, so far as depends upon the judg-
ment of this court, definitely settle it.

In the ordinary case of a contract for the sale or delivery
of a personal chattel, where the price is not paid at the
time of making the contract, but is to be paid upon the de-
livery of the article, the criterion by which to measure
damages for the breach of the contract, is unquestionably

the price of the article at the time it was to be delivered. (*Shepherd* v. *Hampton*, 3 Wheat. 200; *Douglass* v. *M'Allister*, 3 Cranch, 298; 4 John. 15, per Spencer, J.; *Leigh* v. *Patterson*, 8 Taunt. 540; *Gainsford* v. *Carroll*, 2 B. & C. 624.) We are not aware that this principle has ever been contested. It certainly was not our intention to question it, in the judgment pronounced in *West* v. *Wentworth and Beach.*[1]

[1] In an action to recover damages for the non-performance of a contract, other than for the conveyance of land, the rule of damages is the loss or injury sustained by the part ready and willing to perform, and not the price agreed to be paid on actual performance; the rule of law that a tender is equivalent to performance, applies only to the right of action, and not to the measure of damages. *Shannon* v. *Comstock*, 21 Wen. 457.

It seems, however, that if the non-performance was not involuntary, but on the contrary was attributable to fraud or to a desire to benefit the party failing, that such circumstances may be taken into consideration to enhance the damages. Ib.

The vendee of goods received them at a stipulated price, payable in certain indorsed notes, on condition that within a given period he should deliver the notes, or return the goods: but afterward refusing to do either, the vendor sued him for goods in trover; held, that the measure of damages was the actual value of goods and interest; and that the vendee was not concluded by the agreed value. *Stevens* v. *Low*, 2 Hill, 132.

The measure of damages for not performing a contract to deliver specific articles at a specified place, and on a specified day, is the difference between the price agreed and the market value of the articles at the time and place of delivery, consequently evidence of the value at another place or time should not be admitted; because the value at the place stipulated must control. However, if the proper evidence is not clear, then evidence of the value at other places in the vicinity is admissible; but only to ascertain more clearly the value at the place of delivery. *Gregory* v. *M'Dowel*, 8 Wen. 435.

How it would be if the chattels were intended for the private use of the vendee. *Clark* v. *Pinney*, 7 Cow. 681.

If the suit be delayed by attempts to compromise, it seems the damages should be according to the value when the suit is commmenced. Ib.

In cases where the market value of goods is the proper test of damages, the law contemplates a range of the entire market and the average of prices as thus found, running through a reasonable period of time; not any sudden and transient inflation or depression of prices, resulting from causes independent of the operations of lawful commerce. *Smith* v. *Griffith*, 3 Hill, 333. See *West* v. *Wentworth*, 3 Cow. 82.

The price paid for an article by a party, whose damages depends upon the

ALBANY,
Oct. 1827.

Clark
v.
Pinney.

[*688]

But we hold it to be equally clear, that if the price be paid at the time of making the contract, or at any time anterior to that fixed for the delivery, and the vendor fails to deliver, the vendee is not confined in measuring his damages, to the value of the article on the day when it should have been delivered.

Most of the cases in which this principle has been adopted, have grown out of contracts for the delivery and replacing of stock ; and it is believed there is no case to be found in England in which the damages upon such a contract, have been confined to the value of the stock at the time when it should have been replaced, where the action *was brought upon the contract itself, and the question was distinctly presented and passed upon by the court, it appearing affirmatively that the stock was subsequently of greater value.

The case of *Dutch* v. *Warren,* cited by Lord Mansfield, in delivering the opinion of the court, in *Moses* v. *McFarland,* (2 Burr. 1010,) and also reported in 1 Strange, 406, was supposed by the counsel for the plaintiffs in error, to contradict this principle. We think, upon a careful examination of that case, that it justifies no such conclusion. It was cited by Lord Mansfield, to illustrate the principles which regulate the action for money had and received ; and, principally, to show that where money has been paid under a special agreement, which the opposite party refuses to perform, it may be recovered back in that form of action, instead of resorting to an action on the special agreement. The case was substantially this: On the 18th of August, 1720, on payment of £262 10s., by the plaintiff to the defendant, he agreed to transfer to the plaintiff 5 shares in the Welch copper mines, at the opening of the books ; and

market value of it, may be given in evidence against him in ascertaining such value. Ib.

A party complaining of the breach of an executory contract, is entitled, as a general rule, to indemnity for loss occasioned by the non-performance of the other, and for such gain as would be the direct and immediate result of the contract, and the indemnity will include expenses incurred in business as a direct consequence of the failure of defendant to perform his contract. *Freeman* v. *Clute,* 3 Barb. 424. N. Y. Dig. Vol. 2, p. 647, *et seq.,* tit. *Damages.*

gave him a note or memorandum to that effect. The books were opened on the 22d of the same month, when Dutch requested Warren to transfer the shares, which he refused; and told Dutch he might take his remedy; whereupon he brought an action, for the consideration money paid by him. An objection was taken at the trial, " that an action upon the case for money had and received to the plaintiff's use would not lie; but that the action should have been brought for the non-performance of the contract." The objection was overruled by the chief justice, who left " it to the consideration of the jury, whether they would not make the price of the said stock, as it was upon the 22d of August, when it should have been delivered, the measure of the damages; which they did, and gave the plaintiff but £175 damages; and upon a case made for the opinion of the court of common pleas, the decisions at *nisi prius* were sustained. This is the whole of that case, as reported by Lord Mansfield; and, in the first place, it is to be remarked, that, in relation to the amount to be recovered, the question *was, whether the whole consideration money was to [*689] be recovered back, or only the difference between that and the value of the shares. No question was raised as to the time when their value was to be taken. There is nothing in the case to show that it was not the same on the day of trial that it was on the day when the transfer ought to have been made; and in the absence of all question or evidence upon the point, this latter was of course adopted as the time when the value was to be ascertained. The point decided was, that in an action for money had and received, to recover back money paid on such a contract, the whole consideration money could not be considered as received to the plaintiff's use; but only the difference between the value of the stock which ought to have been transferred, and the money paid. Lord Mansfield so considered it. He says, " the damages recovered in that case, show the liberality with which this kind of action is considered; for though the defendant received from the plaintiff £262 10s., yet the difference money only, of £175, was received by him against conscience; and, therefore, the plaintiff, *ex*

*equo et bono,* ought to recover no more. If the five shares had been of much more value, yet the plaintiff could only have recovered the £262 10s. in this form of action."

That case, therefore, most manifestly decides nothing which has a bearing upon the question of damages, where the action is brought upon the contract itself, and not to recover back the money paid, and where it affirmatively appears that the price of the stock has varied between the time when it ought to have been transferred and the time of trial. The subsequent cases, therefore, in which it has repeatedly been held, that, in such a case, the plaintiff is not confined, in estimating his damages, to the value of the stock on the day when it should have been returned, are not in collision with the case of *Dutch* v. *Warren,* nor with the opinion of lord Mansfield, as it is to be inferred from his comments upon it.

*Shepherd* v. *Johnson,* (2 East, 211, A. D. 1802,) is the first in a series of cases upon this subject. That was an *action upon a bond conditioned that the defendant should replace, by a given day, a quantity of stock which the testator of the plaintiff had lent him. Between the day when the stock should have been replaced, and the day of trial, it had risen in value nearly one hundred pounds, and the value on the day of trial was adopted as the true measure of damages. That was the only question presented by the case. *Dutch* v. *Warren,* was cited and relied upon by the defendant's counsel; but it must have been considered as inapplicable, for no notice is taken of it in the opinions delivered by the judges. It is mentioned in a note to this case, that the same measure of damages was adopted by lord Eldon in *Payne* v. *Burk,* decided in 1799.

In *McArthur* v. *Seaforth,* (2 Taunt. 257, A. D. 1810,) the plaintiff, in January, 1801, had loaned to the defendant £3,200 of five per cent. loyalty loan stock; and taken a bond, conditioned for the re-transfer, in one year, of the same amount of 5 per cent. bank annuities. The action appears not to have been brought until 1809 or 1810; and the plaintiff contended that he was entitled to the best of three prices; either, 1. The price at the day agreed on for re-

[*690]

placing the stock; or, 2. the highest price which the stock bore at any intermediate time between the day stipulated for replacing the stock, and the day of trial; or, 3. The price at the day of trial. Under the second head, he claimed the advantage which might have been derived from an exchange of the stock, if it had been replaced for another description of stock, authorized by the government, and which it appeared would have been considerable. This claim was rejected by the court; and he was permitted to recover the value of the stock on the day of trial, which was several per cent. more than on the day when it should have been replaced. His right to this was not disputed by the defendant; indeed, it had been offered before the trial. *Shepherd* v. *Johnson* was the only authority cited, and appears to have been thought conclusive both by the defendant's counsel and the court.

*In *Gainsford* v. *Carroll*, (2 Barn. & Cres. 624,) the cases which I have mentioned, and the principle on which they proceeded, were expressly recognized. That was an action of assumpsit for not delivering a quantity of bacon upon a given day; and the plaintiff claimed, as his measure of damages, the difference between the contract price and the price on the day when the writ of inquiry was executed, on the authority of *Shepherd* v. *Johnson* and *McArthur* v. *Lord Seaforth;* but it was answered by the court, that those cases did not apply; that in the case of a loan of stock, the borrower holds in his hands the money of the lender, and thereby prevents him from using it for the purpose of replacing the stock; but in the case of a purchaser of goods, the vendee is in possession of his money, and he has it in his power, as soon as the vendor has failed in the performance of his contract, to purchase other goods of the like quality and description; and if he has sustained any loss by neglecting to do so, it is his own fault. This distinction was also recognized in *Leigh* v. *Patterson*, (8 Taunt. 540,) and its force and propriety are too obvious to require illustration.

The language of the court in *Gainsford* v. *Carroll*, admits by necessary implication, that if the bacon had been paid

[*691]

for before the day fixed for its delivery, the plaintiff would not have been confined, in assessing his damages, to the value of the article on that day ; for, in that case, he would have parted with his money, and it would not, in judgment of law, have been in his power to purchase other bacon.

This distinction is expressly recognized and sanctioned by chief justice Marshall, in *Shepherd* v. *Hampton*, (3 Wheaton, 200.) That was an action brought for the breach of a contract for the sale and delivery of 100,000 lbs. of cotton, to be delivered on or before the 15th day of February, 1815, for which the plaintiff was to pay at the rate of 10 cents per pound. The defendant delivered about 50,000 lbs. by the time stipulated ; and then refused to fulfil his contract, or deliver any more. Cotton rose between [*692] the 15th of February, 1815, and the commencement *of the suit, from 12 to 30 cents ; and the plaintiff contended that he was entitled by way of damages to the difference between the price stipulated, and the highest market price up to the rendition of the judgment. The court, however, held the rule of damages to be the market price of cotton on the day the contract ought to have been executed. The chief justice says, " The unanimous opinion of the court is, that the price of the article at the time it was to be delivered, is the measure of damages. For myself only," he continues, "I can say, that I should not think the rule would apply to a case where advances of money had been made by the purchaser under the contract. But I am not aware what would be the opinion of the court in such a case."

The case of *Gray* v. *The President, &c., of the Portland Bank*, (3 Mass. Rep. 364,) cited and relied upon by the counsel for the plaintiffs in error, instead of impeaching, appears to corroborate the same principle. That was an action on the case, brought against the bank, for refusing to permit the plaintiff to subscribe a certain number of shares in the stock of the bank, which he contended, and which the court decided he was entitled to. He owned 70 shares as one of the original subscribers to the stock of the

bank. The act of incorporation, however, authorized the company to increase their stock 200,000 dollars in shares of 100 dollars each, to be divided, according to the construction put upon the act, among the original subscribers and their associates, in the proportions in which they held the original stock. It was this additional stock to which the company refused to permit the plaintiff to subscribe, and for which refusal the action was brought. The plaintiff claimed, as damages, the difference between the par value of the stock, and the highest market price which could be proved at any time previous to the trial. But it was held that the difference between the par value of the stock, and its value when the last instalments were paid, and when the certificates were issued, (at which time the plaintiff demanded his certificates) was the measure of damages. Sewall, J., *in discussing this point, says, " It is considerable that the plaintiff made no payment for the stock; and that after tendering payment, he was not obliged, in order to enforce his demand in this action, to deposit his money, or hold it unemployed." And he was of opinion that the plaintiff's loss would be compensated by allowing him the market value of the stock, at the time when he demanded his certificates, and they were refused to him. " Then it was," he remarks, " that the injury by the defendants was complete, and then the plaintiff might have determined the extent of his loss, by a purchase of the number of shares denied him, at the expense of the advance upon them; which, being reimbursed in this action, affords him a satisfaction and indemnity equivalent to a specific relief." Mr. justice Sedgwick concurred in this rule of damages. But it is true, that in expressing his opinion, he supposed the decision was contrary to that of *Shepherd* v. *Johnson*, (2 East, 211.) He states what he considers the true rule, to be this: " That the price of stock, at the time it should be transferred or delivered, (and the same rule applies to other personal property,) shall be that by which the damages shall be assessed. If the plaintiff intends to retain the stock, the then price is what he must pay for an equal amount: and if he intends it for sale, that price is what he

[*693]

ALBANY,
Oct. 1827.

Clark
v.
Pinney.

would obtain for it." There is no doubt that this is the true general rule. It was the true rule in that case. It is always the rule, where the stock or other article is to be paid for on delivery, instead of having been paid for in advance. In that case, Mr. Gray had not paid his money for the stock which the defendants refused to transfer to him. He was legally entitled to the stock, and therefore, in judgment of law, the defendants had promised or undertaken to transfer it. But he had not paid them for it in advance. He had not loaned it to them on contract to re-transfer it by a given day. He had, therefore, parted with nothing which could be supposed to have incapacitated him to purchase an equal quantity of stock on the very day when the defendants refused him this.

[*694]

*That case, therefore, was perfectly consistent with *Shepherd* v. *Johnson*. The distinction escaped judge Sedgwick, although it was clearly perceived and recognized by judge Sewall.

Kent, J., in delivering the opinion of the court in *Cortelyou* v. *Lansing*, (2 Caines' Cas. Err. 216,) cites, apparently with approbation, the case of *Shepherd* v. *Johnson*; and he cites it in confirmation or illustration of the principle which he was then maintaining, that in many cases, the measure of damages is not the value of the chattel or article, at the time when the cause of action accrued. In that case, the depreciation note which had been pawned to Cortelyou, was sold by him in 1788. It was not demanded by the representatives of the pawner until 1799, eleven years afterwards; and there was no evidence of a readiness or capacity on the part of the plaintiff, when he made the demand, to redeem the pledge. The cause of action, therefore, did not arise from the demand; but accrued substantially at the time of the sale; by which act the defendant incapacitated himself to restore the pledge. But the plaintiff in that case, recovered according to the value of the note in 1799, when it was demanded; because, as the court express it, he manifested his will to have it then restored. The rule in trover, that, where the chattel is not of a fixed and determinate value, the damages are not in

all cases confined to its worth at the time of conversion, but may be enhanced according to its increased value subsequent to that time, as established in *Fisher* v. *Prince*, (3 Burr. 1363 ;) and *Whitten* v. *Fuller*, (2 Bl. Rep. 902,) was also adverted to for the same purpose.

The adopting of a period, then subsequent to that when the cause of action accrued, as the time when damages are to be measured, where the circumstances of the case show that the substantial purposes of justice will be best promoted by it, is not an anomaly in the law ; nor is it peculiar to contracts for the sale or delivery of stock.

The case of *Sanders* v. *Kentish* and *Hawksley*, (8 T. R. 162,) has no bearing on the question of damages. It *is not even alluded to in the opinion of the court delivered by lord Kenyon. The only question discussed or decided, was, whether the contract on which the action was brought, was within the statute of 7 Geo. 2, ch. 8, sect. 8, for the preventing of stock-jobbing. It does not appear, from any part of the case, upon what principle the damages were ascertained. It is, however, stated by the counsel for the defendant in *Shepherd* v. *Johnson*, (2 East, 211,) that the damages in *Sanders* v. *Kentish* were estimated according to the price of the stock when it ought to have been transferred : and he stated the reason ; because the stock had fallen in value between that time and the trial. That was also the case in *Forrest* v. *Elwes*, (4 Vesey, 492.)

[*695]

*Morley* v. *Bird*, (3 Vesey, 629,) was a bill filed to enforce the payment of a legacy of stock ; and it was decreed according to the value of the stock, at the end of a year from the death of the testator, when it ought to have been paid. Whether it was, subsequently, of a greater or less value, does not appear. But as that was the period moved for by the complainant, the presumption is that it was most favorable for him.

The rule of damages for the breach of a covenant for quiet enjoyment, where there has been an eviction, depends upon considerations and principles peculiar to that action ; and which have no application to the class of cases which we have been considering. (3 Caines, 113 ; 4 John. 1.)

ALBANY,
Oct. 1827.

Clark
v.
Pinney.

[*696]

We hold it, therefore, to be settled by authority, and rightly settled upon principle, that where a contract is made for the sale and delivery of goods or chattels, and the price or consideration is paid in advance, and an action is brought upon the contract, for the non-delivery, the plaintiff is not confined, in measuring his damages, to the value of the articles on the day when they should have been delivered. But we doubt the propriety of giving the vendee in all cases, as a measure of damages, the highest price of the article, between the day when it should have been delivered and the day of trial. If he immediately, *or without any unreasonable delay, commences, and prosecutes his action, we think it just and proper that the fluctuation in price should be exclusively at the hazard of the defendant; the plaintiff having done every thing in his power to have the contract settled and adjusted, and which is prevented solely by the laches or default of the defendant. In such a case, therefore, the plaintiff is entitled to the highest price between the day when the delivery should have been made, and the day of trial. But where he delays the prosecution of his claim, beyond the period which may be considered reasonable, for the purpose of endeavoring to make an amicable arrangement, he must be considered as assenting to the delay, and ought to participate in the hazard of it. In such a case, we are inclined to think the rule of damages should be the value of the article at the commencement of the suit.

Whether this rule of damages would be applicable to contracts for the sale and delivery of individual articles, purchased for the use and accommodation of the vendee, and not for the purpose of sale, we express no opinion. The case at bar is evidently a contract for the purpose of trade and commerce; and to that class of cases, we wish to be understood, as at present confining our opinion.

The consideration, in this case, is acknowledged to have been received at the time of making the contract. Whether it was in money or in anything else, is not, perhaps, material: but the presumption of law, is, that it was in money.

The question of usury does not arise.

The salt, in this case, was to have been delivered on the 15th of April, 1821. The *placita* of the record in the common pleas, is of the term of May, 1821; so that the suit must have been immediately commenced; and the rule of damages adopted in the court below was correct.

On the first ground, however, we are inclined to think, the judgment ought to be reversed, and a *venire de novo* awarded.