### Day v. Perkins and others.

One who executes a bond and mortgage to another without consideration, or places the same in the hands of the latter, for a particular purpose which is not accomplished; will become liable to pay the mortgage debt to a stranger who advances money or property upon it, if he does any act from which such stranger is authorized to infer that the securities are valid.

A bond and mortgage were executed by three persons to C. on a leasehold property, the principal value of which consisted in a white lead manufactory, with steam engine, machinery and other fixtures, with which those persons conducted business together. The premises were insured in the names of two of them, P. and T. The three deposited the bond and mortgage with C., for him to raise money in their behalf. C. gave no consideration for the bond and mortgage. Being unable to raise the money, C. some months afterwards delivered them to D. as security for a loan of stocks made to him thereon. The stocks not being replaced when due, D. called on P. and T. to assign to him the policy of insurance, which they did, without questioning his right to the securities.

Held, that this was evidence of a loan of the bond and mortgage to C.; and the consideration paid to him by D. was sufficient to support them against the mortgagors.

Held, also from the nature of the property and the business conducted, and the joint interest of the mortgagors, that they were to be deemed partners; and from this,

---

---

and his joining in executing the bond and mortgage and suffering them to remain with C., that the third partner was bound by P. and T.'s transfer of the policy and its consequences.

Such a leasehold is in equity subject to the incidents of the personal property of a partnership.

The ratification of C.'s acts, was held to extend to support an advance which D. was compelled to make to another party, to whom C. had given a prior equitable claim on the bond and mortgage.

Where stocks loaned, are to be returned at a fixed time, the measure of damages on a default, is the market price of the stocks at that time. (*Quære.* See note at the end of the case.)

As between mortgagor and mortgagee, fixtures put up for manufacturing, on property leased for years, are included in and pass by a mortgage of the land.

A bill to foreclose a mortgage, need not allege an indebtedness for which it was given, and if alleged it need not he proved.

January 21, 29, 30 ; Feb. 22, 1845.

THIS was a suit to foreclose a mortgage, executed to secure a bond for $6000, by Jacob Perkins, Ezra Town and Edward Clark, to Lucian Curtis and his two partners, Beam and Jones; dated August 21st, 1843, and assigned to the complainant by the mortgagees on the 11th day of March, 1844.

The answer alleged that the bond and mortgage were given without any consideration, to enable Curtis or his firm to raise money for the mortgagors, which purpose was not accomplished ; and that the complainant knew of these facts when he took the assignment.

It appeared in proof, that the securities were executed for the purpose stated in the answer, and that Curtis failed in his efforts to raise the money ; after which he retained them two or three months.

On the 3d of January, 1844, Curtis & Co. borrowed of the complainant, one hundred shares of the capital stock of the Norwich and Worcester Rail Road Company, which they agreed to return in thirty days, and for securing the contract, as expressed in the receipt for the stock, left with him the bond and mortgage of Perkins and others as security.

Curtis & Co. failed to return the stock, and the complainant pressed for more security.  He met Curtis on the 6th of March, 1844, at the store of Perkins & Town, and called on them to assign to him their policy of insurance on the buildings, fixtures

and machinery on the premises mortgaged. They executed to him such an assignment, to which Curtis was a subscribing witness, and delivered to him the policy.

When the complainant advanced the stock, the bond and mortgage, through inadvertence, were not delivered to him. On calling for them, he found them in the possession of Jacob Little & Co., who claimed a lien on them for $800, which he was compelled to pay in order to obtain them. They came into his possession a day or two after the policy was assigned.

No part of the stock or its proceeds, or of the $800, came to the use or benefit of the mortgagors.

The premises mortgaged consisted of a lease for years at an annual rent of $400, of a tract of ground on the East River near the line of Williamsburgh and Brooklyn; on which the mortgagors had erected a large manufacturing establishment, with a steam engine, machinery and other fixtures. They were manufacturing white lead, and they also had a store in the city of New York. The chief value of the demised premises, consisted in the erections and their appurtenances.

When the stock borrowed by Curtis & Co. became due to the complainant, it was worth from thirty-five to thirty-six dollars on a hundred dollars paid in. During the progress of the suit it became worth from seventy-five to eighty-five dollars on the hundred paid.

*E. Sandford*, for the complainant.

*W. Silliman*, for the defendants.

THE ASSISTANT VICE-CHANCELLOR.—In the view which I have taken of this case, it is unimportant whether or not the bond and mortgage of the defendants were originally placed in the hands of Curtis, in order to procure a specific loan ; or for any purpose of their own which could not be accomplished. I think the evidence is conclusive, that they loaned the bond and mortgage to Curtis, and authorized him to use it for his own benefit or that of his firm.

To sustain their defence, the defendants are driven to call

Curtis as a witness, who if he succeeds in establishing it, must thereby convict himself of a gross fraud as well as breach of trust. His testimony ought therefore, to be carefully scrutinized, and received with caution. Giving to it, however, the full weight to which the same statement would be entitled, from the lips of a stranger to the transaction, it leaves no room for doubt.

The bond and mortgage were transferred to the complainant, in effect, when he advanced the stock to Curtis, on the 3d of January, 1844. The complainant at that time, became the purchaser of the securities, in good faith, without notice, and for a valuable consideration.

The defendants had executed these securities to Curtis, which declared to all the world that they had received the sum secured, and that Curtis had full authority to sell and transfer them. If their purpose were accomplished, or had been frustrated; the defendants ought to have withdrawn them. To strangers, the securities expressed the same language as if the defendants had received the whole sum secured to be paid.

The complainant, instead of having any notice or suspicion of wrong, had been apprised of the defendants intention to execute a mortgage on this property, and of Curtis being their agent for the purpose.

Then on the 6th of March, at Curtis's request, and upon the complainant's demand, Perkins & Town transferred to the complainant, their policy of insurance on the manufactory, fixtures &c., situated on the premises.

It is impossible to account for this act on any rational ground, if the defendants did not then know that Curtis had used the bond and mortgage, and if they had not previously sanctioned it, or intended to ratify and confirm it.

This is too plain for argument. The portion of the premises which was insured, constituted their principal value, and the policy therefore made an important and almost vital part of the security to the mortgagee.

It is incredible that these defendants, without a dollar being paid, and without questioning its object or propriety, should have transferred that policy in the manner they did, unless they had known that the complainant was the owner of their bond and

mortgage, or unless he was about to become such owner with their entire assent.

On either assumption, it was a loan of their securities to Curtis, and the consideration paid to him, became a sufficient consideration to them to support the mortgage.

It is contended by the defendant Clark, that his interest in the premises was not affected by the transfer of the mortgage, because he was not a party to the assignment of the policy of insurance, and therefore not bound by that act or the inferences derived from it.

The mortgaged premises consist of a lease for twenty-one years, on which is erected a white lead manufactory, with steam engines and other appropriate fixtures and apparatus. Clark was a joint lessee with Perkins and Town, and they all had an interest in the business conducted on the demised premises. This business in New York, where their store was kept, went under the name of Perkins & Town.

From the joint demise, the uses to which it was converted, the joint interest in the business, and the character of that business, (it being manufacturing and commercial,) I am bound to infer that they were partners.

Clark had joined in executing the bond and mortgage, and had concurred with the other partners in suffering them to remain in the possession of Curtis. The principal value of the premises mortgaged was of such a nature that either of the copartners could have sold and transferred it, and the leasehold itself was in equity, subject to all the incidents of the personal property of a partnership. (See *Houghton* v. *Houghton*, 11 Simons, 491 ; *Dyer* v. *Clark*, 5 Metc. 562; *Howard* v. *Priest*, 5 ibid. 582.) The policy, being in the name of Perkins & Town, their transfer sufficed to convey it to the complainant. And in reference to its effect as a ratification, I think when I consider the character of the property, the execution of the bond and mortgage, and its continuance with Curtis ; that the transfer of the policy must be deemed the act of the firm, and binding upon Clark in all its consequences.

The mortgage must be declared a valid security to the complainant for the amount of the stock which he advanced.

Then as to the sum paid to obtain the possession of the bond and mortgage.

The conduct and acts of the defendants, were not only a sufficient warrant, as it respects the complainant, for Curtis's transfer to him, but authorized him to infer that all the other dealings of Curtis with the securities were rightful and within his legitimate power and control over the same.

Finding the securities under an equitable mortgage for a debt of Curtis, the complainant was compelled to redeem them in order to protect his own title. Curtis asserts that Little & Co. had no right to retain them. There are two strong circumstances against the witnesses opinion. The debt to Little & Co. is undisputed, and they had possession of the securities.

I think the complainant was justified in paying their claim, and is entitled to hold the securities for the sum which he paid.

A question was made as to the amount which the complainant is entitled to recover for his stock loaned.

The stock was to have been returned in thirty days, and the complainant's measure of damages is the price of the stock in the market at the end of that time. (*Gregory* v. *McDowell*, 8 Wend. 435; *Dey* v. *Dox*, 9 ibid. 129; *Clark* v. *Pinney*, 7 Cow. 681.)(*a*)

It is insisted also, that the steam engine, machinery and fixtures, for manufacturing, are not included in the mortgage.

This is incorrect. Although the lessor of the land could not claim them, it is otherwise of the mortgagee of the lessees. The question here is between grantor and grantee, in which case the grantee holds all fixtures whether for trade and manufacture, or for the purposes of agriculture or habitation. (See the authorities in *Walker* v. *Sherman*, 20 Wend. 636.)

The defendants make two or three other points which I will mention.

It is said that the complainant's bill must be dismissed, because he has not proved the allegation that the defendants were indebted to Curtis and others, for which debt they gave the bond and mortgage.

---

(*a*) See note at the end of the case.

Day v. Perkins.

There are two answers to this. First, if the whole allegation of indebtedness were stricken out of the bill, the complainant would be entitled to a decree on the statement of the execution of the bond and mortgage. Second; the evidence which shows that the defendants loaned the securities to Curtis and others, with the bond itself, supports the charge of an indebtedness, *pro hac vice.*

The last suggestion also answers the point, that the bill should have set forth the authority of Curtis to transfer the securities.

It is further objected that the complainant received other collateral securities together with this mortgage, and he ought to show that he has exhausted those, before proceeding upon the mortgage.

I can perceive no good reason why he should show this. If he has received any thing upon the other collaterals, the defendants will have the benefit of it on computing the amount due. If they are of any value, the defendants may be subrogated to them on paying the complainant's claim.

The complainant is entitled to a decree for foreclosure and sale.

If he is content with the price of the stock when it should have been restored, as fixed by the defendant's witness, there need be no reference on that point. In that event, the decree will be for such price with interest, and for the sum paid to J. Little & Co. with interest, and the costs of the suit.(*a*)

---

(*a*) The defendants appealed to the Chancellor, who affirmed the decree with costs, on the 6th of October, 1846. He intimated a doubt at the hearing, whether the complainant was not entitled to recover for the highest price the stock bore in market, intermediate the time when it should have been returned to him, and the commencement of the suit, or the closing of the proofs in the cause. The decision on this point in the court below, is therefore stated with a *quære.*

See the following kindred cases. In *Sadler* v. *Lee*, (6 Beavan, 324,) where the bankers of trustees wrongfully sold out stock and applied it to their own purposes; it was held that the measure of their liability was the amount paid in replacing the stock. In *Watts* v. *Girdlestone*, (6 ibid. 188,) it was decided that where trustees are directed to invest trust money on government or real securities, and they do neither, they are answerable at the option of the cestuis que trust, either for the money or the stock which might have been purchased therewith.