## CANNON *v.* FOLSOM.

The general settled rule of damage, both in England and the United States, for failing to deliver goods at a specified time and place, where the price is not paid before the time for delivery, is the difference between the contract and the market price, at the time delivery should have been made.

Where the price of the commodity contracted for, has been paid prior to the

time for delivery, a somewhat different rule obtains; and, in such case, the plaintiff is not confined in his recovery, to the difference between the contract and the market price on the day of delivery, but may recover the highest market price between the day for delivery and the time suit is brought, provided the plaintiff does not unreasonably delay the institution of his suit.

A party contracting to deliver goods at a specified time and place, where no express stipulations enter into the contract, to vary his liability, may be fairly presumed to have contracted with reference to these general rules.

It is not competent to enlarge a written contract by parol evidence, or by special pleading.

Where a party contracted to deliver, at a specified time and place, a certain quantity of pine logs, at a given price; *Held*, In an action on the contract, that there was nothing in the contract which tended to show, that any other than the ordinary liability was stipulated for.

## *Appeal from the Scott District Court.*

THIS was an action on the following contract: Memorandum of agreement made and entered into this 12th day of August, 1854, between W. H. C. Folsom, of Minnesota, of one part, and J. M. Cannon, of Davenport, Iowa, of the other part. The said W. H. C. Folsom agrees to deliver to the said J. M. Cannon, in the river opposite his mill at Davenport, or at Le Claire, on or before the 10th of September next, eight hundred and forty-three thousand and three hundred and twenty-three feet of pine logs at the St. Croix scale, now in the Mississippi River, on their way down, for which the said Cannon agrees to pay him at the rate of fifteen dollars per thousand feet, as follows: "Five thousand dollars in hand, which is hereby acknowledged to be received, and the balance on the delivery of the logs, as aforesaid. W. H. C. Folsom." Indorsed as follows: "If these logs should not be delivered, for any reasonable detention, for fifteen days after the time specified, no advantage will be taken of that delay. J. M. Cannon."

The plaintiff, in his petition, avers that he had advanced $6,565 on the contract, and that defendant had delivered only 359,903 feet of logs. Plaintiff also avers, that he was the owner of a sawmill at Davenport, and that defendant knew it; that he purchased the logs for the purpose of saw-

Cannon v. Folsom.

ing them into lumber at said mill; that *after* the breach of said contract, the price of logs rose to eighteen dollars per thousand, and that plaintiff, after the breach, could not obtain other logs to saw into lumber, during the fall and winter of 1854, and before the closing of the river, whereby his mill lay idle for the space of six months; and claims, in addition to the money advanced above, the price of logs not delivered, as per contract; for the enhanced price of the logs, three dollars per thousand; and the "*following special damages:*" The sum of three thousand five hundred dollars, for the price and value of the lumber into which said logs were intended to be sawed, over and above the cost thereof, and the cost of sawing the same; the sum of five thousand dollars, by reason of said mill of plaintiff's lying idle for want of said logs, and the wages of laborers, to take care of and preserve the saws, when lying idle. To so much of the petition as "seeks to recover *special damages*," defendant demurred; and the court sustained the demurrer, ruling that "special damages are not recoverable in this case." From this ruling, plaintiff appeals, and assigns the same as error. The petition does not show at what time, nor under what circumstances, the additional advancement above the $5,000 mentioned in the contract, was made.

*Whitaker & Grant*, for the appellant.

The general rule of damages upon a contract to deliver goods, where the vendee has paid the money in advance, is, that the plaintiff may recover the highest price of such goods, between the time of delivery and the time of trial. 2 Greenleaf's Evidence, § 261; *West* v. *Pritchard*, 19 Conn. 212. The general rule is, that the plaintiff recovers the difference between the price paid and the market value at the time of the breach; but there are cases where the plaintiff recovers the profits which would accrue, if the party had performed his contract. *Dunlap* v. *Higgins*, 1 House of Lords Cases, cited in 3 Livingston's Law Mag. 613, was a case where such profits were allowed; and in which the court say:

"What does the party come into court for? To obtain compensation for the other party's not having performed his contract. The jurors had to ascertain the damages which had arisen from the non-fulfillment of this contract. Suppose a party, who has agreed to purchase a certain quantity of iron on a particular day, has himself entered into a contract with somebody else, conditioned for the supply of the same quantity of iron to be then delivered; and that he, not being able to obtain the quantity contracted for on that particular day, loses the benefit arising from the sub-contract. Assuming that the market price of iron had risen in the meantime, the plaintiffs ought not only to recover the difference between the contract and the market price, but also that profit which would have been received, if the party had performed his contract." "No other," proceeds Lord Cottenham, "is reconcilable with justice, nor with the duty which the jury had to perform, that of deciding the amount of damages which the party had suffered by the breach of the contract. Most cases of contract vary from each other; and whatever general rules there may be as to awarding damages, they must be modified by the particular cases to which they come to be applied." In Sedgwick on Damages, 76, it is said: "Some of the earlier cases have gone too far, and profits are sometimes recovered. Where contracts are made to deliver goods at a particular place, the rule of damages is the difference between the price of the goods, where they are and where they are to be, which is profits."

"Profits or advantages, which are the direct and immediate, fruits of the contract entered into between the parties, stand on a different footing from speculating profits. They are part and parcel of the contract itself, entering into, and constituting a portion of its very elements; something stipulated for, the right to the enjoyment of which, is just as clear and plain as to the fulfillment of any other stipulation. They are presumed to have been taken into consideration and deliberated upon, before the contract was made, and formed perhaps the only inducement to make it." *Masterton.* v. *Mayor of Brooklyn,* 7 Hill, 62. Profits were allowed on

the construction of a section of an aqueduct.   *Clark* v. *The Mayor*, 3 Barbour, 288, affirmed 4 Comstock, 338.   In the case of *Williamson* v. *Barrett*, 13 Howard, 111, where one steamboat was run into and damaged by another boat, the plaintiff recovered for the loss of her use, and what she might have earned while detained in making repairs.   The court allowed the plaintiff profits, on a breach of a contract for work on a railroad.   Actual damages, they say, includes the direct and actual loss which the plaintiff sustained, *propter rem ipsam non habitam.* · *Philadelphia W. & R. R. Co.* v. *Howard*, 13 Howard, 307.   See also *Dormel* v. *Jones*, 17 Alabama, 689.   The defendant contracted to furnish plaintiff a certain machine.   He delayed furnishing it for three months.   The plaintiff was held entitled to recover for the value of the use of a machine.   *Singer* v. *Farnsworth*, 2 Carter, 597.   On a breach of a contract for slaughtering hogs, the plaintiff recovered the net profits.   *Thompson* v. *Jackson, Owsley & Co.*, 14 B. Mon. 114.   The plaintiff is entitled to recover such profits as would have accrued and grown out of the contract, as the direct and immediate fruits of its fulfillment.   *Fox* v. *Harding*, 7 Cushing, 522.

Profits were allowed as damages in *Waters* v. *Howes*, 20 English L. & E. R. 410.   In *Alder* v. *Keighly*, 15 Mees. & Wellsby, 117, it is said, " the rule is clear that the amount which the plaintiff would have received, if the contract had been kept, is the measure of damages, if the contract be broken."   In *Hadley* v. *Baxendale*, 26 Eng. Law & Eq. 402, the law is thus laid down : " Where two parties have made a contract, which one of them has broken, the damages which the other party ought to receive, should be either such as may fairly and reasonably be considered as arising naturally, that is, according to the usual course of things, from such breach, or such as may be reasonably supposed to have been in contemplation of the parties at the time they made the contract, as the probable result of it.   Now, if the special circumstances under which the contract was actually made, were communicated by the plaintiff to the defendant, and thus known to both parties, the damages resulting from a breach,

which they would reasonably contemplate, would be the amount of injury which would ordinarily follow from a breach under these special circumstances, so known and communicated." Where defective machinery was put into a mill, the plaintiff was allowed to recover his loss of profits for not running his mill. *Davis* v. *Talcott*, 14 Barb. 612; *Green* v. *Marue*, 11 Illinois, 613; *Clifford* v. *Richardson*, 18 Vermont, 620; *White* v. *Manly*, 8 Pick. 356; 9 Wend. 325.

In this case, the plaintiff has lost the entire use of his mill, for the time it would have been occupied in sawing these logs. He could not supply other logs; the price not only rose in value (the court says he could not recover that), but they could not be had. If the loss of the use of the mill is not the direct consequence of the breach of the contract, we cannot distinguish between direct and remote. The general rule is modified by the admitted facts, and where the contract is made with regard to special circumstances, and these circumstances communicated by the plaintiff to the defendant, the damages which might be reasonably contemplated, are recoverable. The plaintiff alleges that he owned a saw-mill; it is referred to in the contract; that he bought the logs for the purpose of sawing them; that this was known to the defendant; that the loss of the logs could not be supplied, and that, consequently, the plaintiff's mill lay idle, for all the time it would have been employed in sawing them. Now, if Cannon had employed Folsom to put an engine in his mill by a certain time, or to do certain work on his machinery, and he had not, Cannon could have recovered for all the time his mill lay idle, while the engine was delayed or imperfect. He employed him to furnish him logs, and he neglects to do it, whereby his mill lay idle. Why can he recover in one case, and not the other?

It don't matter with us, whether these damages are called loss of profits or loss of the use of the mill, the rule brings us to the same result. If he could make as much profit by running the mill, it would be because he could saw the logs

Cannon v. Folsom.

into timber, and get the money for it. The result is the same, and the petition is framed to recover the damages in either form.

*Cook & Dillon*, for the appellee.

The *contract* constituting the foundation of the plaintiff's action in this case, *is in writing*. It is an ordinary contract for the sale and delivery of chattels, at a fixed time, and at a designated place. It is nothing more. Having been reduced to writing, and signed by the parties, and being mutually obligatory and intelligible, it is *conclusively, indisputably, presumed to contain the whole engagements of the parties, and the "extent" and manner of their undertaking.* 1 Greenl. Ev. § 275. Being in writing, *all* of the *rights* and *liabilities* of each of the parties, arise from the written instrument, and from nothing else. Outside of the *written* contract, neither party has any *rights;* and outside of, and beyond, the written contract, neither party can be subjected to any liabilities. The plaintiff brings an action on the written contract, and he cannot set out in his petition, as he has sought to do, other facts outside of, and independent of the contract, to *increase or alter the liability* of the defendant, as for instance, that the defendant "knew the plaintiff was the owner of a mill; that he designed to manufacture the logs into lumber," &c. It will be specially noted, that the plaintiff nowhere avers that the defendant knew that the plaintiff could make the *immense profits* sought to be recovered. As a pleading founded on a *written contract*, we will venture to say, that the amended petition of the plaintiff is *without precedent* or *parallel*, in any law volume, from the Year Books, down to the latest publication. The plaintiff in this action, can only recover on the *written contract*. He can recover on nothing else. Then, why does he allege facts, and can he be permitted to allege facts, outside of the contract, tending to increase the liability of the defendant? If, in this way, he recovers more than he could by declaring on the contract alone, then he recovers on something *additional to the contract.* In that case, to use the language of Mr. Greenleaf, the writ-

ten contract "would not measure the *extent* and *nature* of the liability" of the defendant. What is the object of that general rule of law, so deeply imbedded in the system of our jurisprudence, which declares that "*extrinsic parol evidence*, is not admissible to vary, contradict, explain or alter the effect of a written instrument?" Let Mr. Greenleaf answer:—"Because it would tend, in many instances, to substitute a new and different contract for the one really agreed upon, to the prejudice of the parties, or one of them."

We say that the plaintiff, in his amended petition, does allege facts "*extrinsic* to the written agreement," to vary the effect of the written agreement, in this, to wit: to increase and augment the defendant's liability thereon; and these *extrinsic*, and so to speak *parol* facts, being alleged, must be proved by extrinsic parol evidence. We say they must be proved by verbal evidence, because the written contract does not prove them; and if these extrinsic facts can be proved by extrinsic testimony, whereby the defendant's liability is increased, what becomes of the rule which says, that the "effect of a written instrument cannot be altered by parol?" It is evaded, destroyed. We say that the plaintiff has alleged facts extrinsic to the writing, to vary its effect, by increasing the defendant's liability. If not, why has he alleged them? Can they be averred for any other purpose? And if for this purpose, can he be permitted to do it?

The only question in this case, is: did the court err in deciding that in the agreement sued on, for the sale and de-livery of pine logs, at a fixed time and place, that *what* the law knows as *special damages* were not recoverable? The court will notice that this is an *ordinary* contract, for the *sale and delivery of personal property*, at a *fixed time and place*. Sedgwick on Damages, 260, thus lays down the rule in such cases: "It seems to be *well settled* as a general rule, both in England and the United States, that the measure of damages, is the difference between the contract price and the market value of the article, at the time it should have been delivered," &c. On page 278, after reviewing all the cases, he states their general result, as follows: "That the market

value or price on the day of the breach, controls the measure of damages." Also, see 2 Greenl. Evidence, § 261; and 2 Kent's Com. 480 (note to 7th ed.), where Judge KENT repudiates the doctrine of recovering profits, and says: "The true rule of damages, is the value of the article at the time of the breach." In New York, the rule has been thus settled, by a great number of decisions,—among which we cite: *Dey* v. *Dox*, 9 Wend. 129, which is explicit and in point; *Clark* v. *Pinney*, 7 Cowen, 681; *Davis* v. *Shields*, 24 Wend. 322; *Beal* v. *Terry*, 2 Sandf. S. C. 127; where it is said, that, "the true rule of damages is the difference between the contract price and market value, on the 30th of June (the contract time), with interest on such difference." In Pennsylvania, the law is the same. See Sedgwick on Damages, 268, note; 5 Watts & Serg. 106. In Connecticut, the rule is the same. See Sedgwick, 268; 2 Conn. 487; 5 Ib. 227; C. J. Swift's opinion in Am. Com. Law, 89. In Arkansas, the same doctrine is held. Sedgwick, 279, note; *Hanna* v. *Harter*, 2 Ark. 397. This is the Massachusetts rule. *Shaw* v. *Nudd*, 8 Pick. 9; 16 Ib. 194. This is the Maine rule. *Smith* v. *Berry*, 18 Maine, 122, a strong case. This is the Illinois rule. *Smith* v. *Dunlap*, 12 Ills. 184. This is the rule in Maryland. *Williamson* v. *Dillon*, 1 Harris & Gill, 444. This is the rule in Kentucky. American Com. Law, 90. Even in California, the rule is the same. *Tobin* v. *Post*, 3 Cal. 375. This is the Texas rule. 4 Texas, 289. This is the rule adopted in the Federal Courts. *Shepard* v. *Hampton*, 3 Wheat, 200; *Douglass* v. *McAllister*, 3 Cranch, 298; 6 Wheat, 109; *Willins* v. *Consequa*, 1 Pet. 85; Chitty on Contracts (6th ed.), 445, and notes. This is the rule in England. *Gainsford* v. *Carroll*, 2 B. & C. 624; 9 Eng. C. L. 204; in point. *Boorman* v. *Nash*, 9 B. & C. 145; 17 Eng. C. L. 344.

The plaintiff, in his amended petition, expressly claims to recover the profits he could have made (?) in manufacturing the logs into lumber. The following cases will show, that both the English and American courts have concurred in disallowing profits as any part of damages to be compensated, both

in cases of contract and of tort. *Fleureau* v. *Thornhill*, 2 W. Black. 1078; *Robinson* v. *Harman*, 1 Ex. Rep. 849; *Schooner Lively*, 1 Gallison, 314; *The Amiable Nancy*, 3 Wheat. 546; *La Amistad de Rues*, 5 Wheat. 385; *Decol v. Arnold*, 3 Dall. 333; *Blanchard* v. *Ely*, 21 Wendell, 342; *Smith* v. *Coudrey*, 1 Howard, 28; Sedgwick on Damages, 70 and 71.

ISBELL, J.—There is some difficulty in clearly understanding what was intended by the defendant in his demurrer, by " by special damage," as well as in the ruling of the court, where the same phrase is used. This may mean the damages *specially counted upon* by plaintiff; or it may mean those damages claimed after the words, "*the following special damages*," used in the declaration. From the whole case, we conclude that the latter was intended by the demurrer and ruling. Assuming this to be the matter demurred to, the following are the damages claimed, which were excluded by the sustaining of the demurrer; viz.: the sum claimed as the price of the lumber, into which the logs were intended to be sawed, over and above the cost thereof, and the cost of sawing the same; for the mill lying idle, and for the wages of laborers to take care of and preserve the saws, while the mill was idle.

The general settled rule of damage, both in England and the United States, for failing to deliver goods at a specified time and place, when the price is not paid or advanced before the time for delivery, is the difference between the contract and the market price at the time the delivery should have been made. The authorities cited by defendant are full on this point, and further reference here is deemed unnecessary.

Where the price of the commodity contracted to be delivered, has been paid prior to the time for delivery, a somewhat different rule obtains, and it has been repeatedly held, that, in such case, the plaintiff is not confined in his recovery to the difference between the contract and market price on the day of delivery (*Clark* v. *Pinney*, 7 Cow. 681; *West* v·

*Prichard*, 19 Conn. 212; per Marshall, C. J. in *Shepherd* v. *Hampton*, 3 Wheat., 200); but he may recover the highest market price between the day for delivery and the time suit is brought, provided the plaintiff does not unreasonably delay the institution of his suit. These are well-established rules of law. A party, contracting to deliver goods at a specified time and place, where no express stipulations enter into the contract to vary his liability, may be fairly presumed to have contracted with relation to them. There is nothing in the contract at the foundation of this suit, that tends to show that any other than the ordinary liability was stipulated for. The contract is in writing, and the plaintiff, in his recovery, must be confined to it. It is not competent to enlarge it by parol evidence, or by special pleading. To allow any of the damages excluded by the demurrer, would be to enlarge the contract.

It is laid down by Williams, C. J., in delivering the opinion of the court in *Bush* v. *Chapman*, 2 G. Greene, 551, that, " if the plaintiff sue on a written or special contract, so as to make it the basis of his action, it must regulate his right to recover, as well as the amount."

We hold, therefore, that the demurrer was properly sustained.

Judgment affirmed.