MARTIN B. SCOTT, Respondent, *v.* WM. T. ROGERS, impleaded with GEORGE W. ROGERS, Appellant.

Where a factor was instructed by his principal to sell wheat on consignment at a specified price on a given day, and, if not sold on that day, to ship the same to New York, the factor must obey instructions, or he will be liable as for a conversion of the wheat.

If, on the day he is required to sell, he give a refusal until the morning of the day following, and accordingly perfects the sale on that day, he will be liable for disobeying the instructions of his principal, and may be treated as having converted the wheat to his own use.

Where the gist of the action is for such breach of duty, the rule of damages applicable is to allow the plaintiff the highest market price of the property prevailing between the time of the conversion, and a reasonable time thereafter within which to commence the action.

Where the conversion took place at Buffalo, N. Y., July 13, and navigation between Buffalo and New York closed about the 29th of November of the same year, *it was held*, that a reasonable time within which to commence the action extended to said 29th of November.

Where the intention of the party to sell the property at a definite time can be ascertained, that intention should be considered in determining the time within which to limit the inquiry as to the market price of the property converted, etc.

The plaintiff may restrict the time within which to determine the measure of damages, by signifying in any manner his election to treat the property converted as having vested in another.

But, *it seems*, the plaintiff will not be permitted to prosecute his inquiries through the entire period between the conversion and the time when the statute of limitations would attach, for the purpose of discovering the highest price at which such property sold in market.

THIS is an appeal from a judgment rendered by the Superior Court of Buffalo, in favor of the plaintiff against the defendants.

The action was to recover damages resulting from an omission by the defendants to sell or ship the plaintiff's wheat, in accordance with his instructions, and was tried by the court without a jury. The plaintiff resided in Cleveland, Ohio, and the defendants were commission merchants, and, as such, engaged in business at Buffalo. They acted as the factors and agents of the plaintiff in receiving and selling at Buffalo,

and in shipping thence to New York, property consigned to them by the plaintiff.

On the 12th of July, 1853, the defendants had in store 5,558 bushels of Ohio white wheat, belonging to the plaintiff. On that day the plaintiff telegraphed to the defendants to sell on *that day* this wheat for one dollar and eight cents per bushel, or, if not sold on that day, to ship it to Messrs. Wright, Gillett & Rawson, in New York.

After the receipt of this dispatch, on the 12th of July, the defendants gave to John T. Noye a sample of the wheat, and offered to sell it to him at one dollar and eight cents per bushel. Mr. Noye desired to look at the wheat, and to have till the morning of the 13th of July to determine whether he would take it at that price. The defendants gave him this privilege, provided no news was received to change the value of the wheat.

On the morning of the 13th of July, and at about 8 o'clock, Mr. Noye came to the defendants' office and took the wheat, paying the defendants one dollar and eight cents per bushel for it. The plaintiff never ratified this sale, but repudiated it at once, by telegraph, under date of July 13th. Some correspondence ensued between the parties, which failed to result in an adjustment of the controversy, and this suit was brought to recover the plaintiff's damages. The court found, in substance, that the sale was in good faith, and because the defendants supposed they were promoting the interests of the plaintiff; that if the wheat had been shipped on the 13th, it would have reached New York between July 27th and 31st, and that the highest price down to August 4th was $1.31 — the expense of transportation, aside from insurance, storage, and other charges, being 15½ cents per bushel. The value of the wheat in the New York market, between July 25th and November 29th, fluctuated between $1.25 and $1.65; being at the last named sum at the last named date.

The court decided that the sale of the wheat was unauthorized and illegal, and that the measure of damages was the difference between the price for which the wheat was sold and what it was worth at a reasonable time after the sale,

within which to commence the action. · The court fixed the 29th of November, 1853, as such reasonable time. The wheat was then worth, in the city of New York, one dollar and sixty-five cents per bushel. The court took this value, and deducted therefrom the cost of transportation of the wheat from Buffalo to New York, and the storage and keeping of the property till the 29th of November, making twenty cents and one-quarter of a cent per bushel. The difference between the price at which the wheat sold, and its value on the day fixed by the court, was thirty-six cents and three-quarters of a cent per bushel, for which, with interest, the court gave judgment, making in the aggregate the sum of $2,764.44, and the costs of the action.

The defendants excepted to the decision of the court,

First. As being contrary to evidence, and as to the measure of damages, and also to that part of the finding which held that the sale was unauthorized and illegal; they contended they substantially complied with the plaintiff's instructions.

Second. They excepted to the decision relative to the measure of damages prescribed by the court; they claimed the damages were merely nominal, at least that the plaintiff ought not to recover more than the difference between the price received and what it would have been when the wheat could have been transported to and sold in the city of New York, fixing, as that time, August 2d.

Third. They excepted to the decision that a reasonable time after the sale, within which to commence the action, was the 29th of November.

*H. W. Rogers*, for the appellant.

*John Ganson*, for the respondent.

Hogeboom, J. This is an action by a principal against his factors, to recover damages for an unauthorized and illegal sale of his property; and the question in the case is as to the proper rule of damages.

The complaint contains two counts. The first is for a neglect and refusal to obey plaintiff's instructions to sell his

wheat at Buffalo, at a particular date, at $1.08 per bushel, or, in the event of their not doing so on such day, to ship same to New York; and for a violation of his instructions in selling the same at Buffalo for the price mentioned at a subsequent date, whereby plaintiff was deprived of large gains and profits in the sale thereof.

The second count is for a neglect and refusal to ship the wheat to New York, pursuant to instructions, and for shipping, using and disposing of the same in their own name and behalf, contrary to the plaintiff's instructions, whereby plaintiff lost the wheat and large gains and profits in the sale thereof.

The damages claimed in the complaint are, under the first count, the difference in price between the wheat as sold and what it would have sold for in New York; and, under the second count, the *value* of the wheat in the city of New York, deducting in each case the expense of transportation. There is also a claim for general relief.

The gist of the action, therefore, is for a breach of duty in making sale of the wheat in violation of the instructions of the plaintiff, and in converting the same to the defendants' use, resulting in the loss of the wheat to the plaintiff, and in the loss by him of large gains and profits in the sale thereof.

This embraces essentially a cause of action in case and in trover, and entitles the plaintiff to the damages recoverable in those actions. I am not aware that, in the absence of fraud or misrepresentation, or willful misconduct, there is any difference in the rule of damages applicable to this case, whether the action be for a breach of contract or for a violation of duty; and I agree with one of the judges who delivered opinions on the former argument, and with the Superior Court of New York in *Suydam* v. *Jenkins* (3 Sandf. S. C., 614), that there should be none. The question is one of complete indemnity to the party injured. It is not stated in terms, and perhaps not in effect, that the sale by the defendants was *fraudulent or in bad faith;* and, therefore, no damages, founded specially on that ground, ought to be recovered. But it is stated that the sale was without author-

ity and in violation of instructions, and, therefore, every damage ·consequent upon such a sale should be allowed. It is not stated that the instructions to ship to New York were with a view to the *immediate* sale of the wheat on its arrival at New York, and, therefore, the plaintiff should not be limited to the price of the wheat immediately after it would have arrived in New York, if forwarded according to the plaintiff's ·instructions. But it is stated, inferentially at least, that the order to ship to New York was with a view to an ultimate sale there, inasmuch as it is stated that, by the act of the defendants, the plaintiff lost large gains and profits in the *sale* of the wheat; and hence we may, perhaps, safely infer that the object of the plaintiff was eventually to make sale of the wheat. Perhaps, if this would involve a more restricted rule of damages than would otherwise obtain, the plaintiff is not limited to it, inasmuch as there is in the complaint substantially an allegation of an illegal conversion of the property by the defendants, entitling the plaintiff to such damages as belong to such a cause of action.

The causes of action in the complaint were sustained by the evidence. There was a plain violation of instructions by the defendants, though probably not in bad faith, and a sale by them at Buffalo or Tonawanda at a date when they were expressly ordered to ship to New York. This was a clear breach of duty, and, in effect, a conversion of the property; and the question returns, what damages was the plaintiff entitled to recover?

If the plaintiff's orders had been obeyed, he would have retained his property, and might, if he had so chosen, have kept the same up to the time of the trial, when a recovery for the value thereof would, in effect, and by operation of law, have transferred the title thereto to the defendants; or he might have elected his own time and place for the sale thereof. Of both of these rights he was deprived by the act of the defendants; and the defendants must make the plaintiff good. There is nothing in the case or in the evidence by which we can precisely ascertain what the plaintiff would have done with the property if he had retained it; and this

presents one of the chief difficulties in ascertaining, in point
of fact, the damages which the plaintiff has sustained. If
he designed an immediate sale thereof, on its arrival in New
York, the price at which he could have sold it at that time,
as compared with the price which the defendants got for it,
and which, from a stipulation in the case, we are authorized
to infer, has been paid over to the plaintiff, would show the
loss sustained by him. But, as before stated, neither the
allegations in the complaint nor the evidence in the case dis-
closes any clear proof of an intent to make an immediate
sale; and I think, as well under well-settled rules of law as
the reason and spirit of the case, the plaintiff ought not to
be limited to such damages. He may be supposed to have
been reasonably conversant with the market and with the
prospects of a rise in price, and to have anticipated, to some
extent, the results as to such rise, which subsequent events
verified. What precisely he would have done is, as before
stated, a question of difficult solution. If, at some subsequent
time within a reasonable period after the conversion, he had
notified the defendants of his election to adopt the price at
that period, I think that would have fixed a reasonable and
lawful standard for the estimate of damages. It would have
been saying, in substance, I elect to consider the property as
mine up to this period; I now elect to make sale of it, and
I hold you responsible for the present value of the property.
But no such course was taken. No notice was ever given,
otherwise than such as is to be inferred from the commence-
ment of the suit. No suit was commenced until years after-
wards; and it is now claimed to be the legal rule that the
aggrieved party may make price at any time after the conver-
sion and before the trial of the cause, or, at least, that he may
do so provided the suit is commenced within a reasonable
time after the conversion. This was the rule adopted at the
trial, with this qualification, that the price at the commence-
ment of a suit, commenced within a reasonable time after the
conversion, instead of the price at the time of the trial,
furnished the criterion for estimating the damages.

In the absence of any definite means for ascertaining the

period when the owner of the property would have disposed of it, we are necessarily more or less in the dark as to the amount of injury which he has sustained by the illegal act of the defendants, and are driven to resort more or less to conjecture, or to fix upon some arbitrary period for determining the price of the property. It is obviously a rule of doubtful justice to give to the plaintiff the whole period until the statute of limitations would attach for the commencement of his action, and the whole period intervening between the conversion and the trial to select his standard of price, without ever having given notice of his intention to adopt the price of any particular period. A much more just and equitable rule, independent of adjudications upon this question, would seem to be, to allow to the plaintiff some reasonable period within the statute of limitations for fixing the price of the property, provided he notifies the adverse party *at the time* of such act on his part; but never to allow him unlimited liberty of selection as to the price of which he will avail himself at the trial of the cause. If he does not make and notify his election of time, then to fix the time by the day of commencing the action, provided the action be commenced within a reasonable time after the conversion. This is an election to hold the defendant liable for the conversion, and in effect to treat the property as his. The time of the trial and verdict is, it is true, the time of the actual transfer of the property to the defendant by operation of law, or, rather, the payment or collection of the sum recovered completes and perfects the legal transfer to the defendant. But the commencement of the suit is the election to hold the defendant liable from and after that date for the value of the property. This, as it appears to me, is justice done to both parties. The defendant, by converting the property, becomes liable for its value. If the plaintiff elects to take its value as of that date, the defendant has had the benefit of that precise sum. If the plaintiff at any time makes price, and notifies the defendant, whether it be by a specific notice before the commencement of the suit, or by the actual commencement of the action, the defendant can go into the

market and sell the property of the plaintiff which he has theretofore converted to his use and realize its market value, or, if he has disposed of it, sell the property which, at the time of the illegal conversion, if he wishes to protect himself from loss, he is legally bound to provide himself with as a substitute for it, to meet the plaintiff's demands. Thus the defendant can substantially indemnify himself against loss; and if he fails to take measures to do it, is justly responsible in damages for his unwarranted aggression upon the rights of the plaintiff. This seems to me the just and equitable rule.

It is not, however, perhaps quite the rule which has obtained in the law for settling the question of damages in the case of an illegal conversion of property. I think that rule is too well settled now to be shaken, whatever we may think of its intrinsic justice and propriety; and there are strong reasons to be urged in its favor in these respects. The defendants' counsel wish to unsettle it; but it is better to abide by a rule of law that is firmly established in repeated adjudications of the courts, than to have a fluctuating rule which is constantly varying according to the caprice or the fallible judgment of judges and juries.

I think the rule of damages applicable to cases of this description is reasonably well settled to be as liberal as this in favor of the plaintiff, to wit: to allow to the plaintiff the highest price for the property prevailing between the time of conversion and a reasonable time afterwards for the commencement of the action. Some of the cases carry the period up to the time of trial of a suit commenced within a reasonable time; and as between these two periods — the time of commencing the suit and the time of trial — the rule is somewhat fluctuating. What this reasonable time shall be, has never been definitely settled, and may, perhaps, fluctuate to some extent according to the circumstances of the particular case. In the case at bar, it was held to be four months after the conversion, which terminated before the close of navigation in that year; which latter circumstance might perhaps be supposed to have some probable influence in rais-

ing the market price of the property in New York, and therefore as not unlikely to induce the plaintiff to retain the property until that time. I think the adjudications allow at least so much latitude in cases similarly circumstanced. For reasons before stated, the limit of time is necessarily to some extent arbitrary, for the want of available means to determine when the plaintiff would have sold his property, and, by consequence, the damages he has sustained. But it has been supposed, and I think reasonably, that a liberal allowance of time should be made in favor of the plaintiff, and against the defendant, inasmuch as the latter is the defaulting party.

It has been held in cases where damages are sought for the breach of a contract for the sale of personal property, wholly executory on both sides, that the true rule of damages is the difference between the purchase price named in the contract and the price of the property at the time fixed for performance; that, as nothing had been paid upon the property, if the plaintiff still wished to obtain the property, he could go into the market and procure it with the sum named in the contract, with the addition of its rise in value, or, if he chose simply to pocket the damages, he could do so by receiving a sum equal to the difference in value between the two periods, and thus obtain complete indemnity.

But that, where the executory contract had been performed on the part of the plaintiff by the payment of the price, and was broken by the defendant by the non-delivery of the property, the true rule of damages was to allow to the plaintiff the highest market price intervening between the time of conversion and the time of the commencement of the action or of the trial when the action was commenced within a reasonable time after the conversion, upon the principle that it might be inconvenient or impossible and was unjust to require the plaintiff, in order to procure a similar article to that illegally converted, to pay the contract price a second time, with the added value prevailing at the period of performance; and that it was more equitable to hold the defendant responsible for the fluctuations of the market, so long as

he continued to deprive the plaintiff of the article purchased, up to the period when, by operation of law and the effect of a verdict, the title was transferred from the plaintiff to the defendant.

It is further stated, in one of the opinions delivered in this case at a former term of this court, that the present case is in principle analogous to that of an executory contract for the purchase of the property where the purchase-money is pre-paid, inasmuch as the plaintiff, owning the property, has paid its price and acquired an absolute title to it, and cannot with justice be called upon to advance again the purchase-money to buy a similar article. I concur in this reasoning, and think the same principle governs both cases. The plaintiff has, in effect, advanced the price of the article; he has done more; he has become its absolute owner. He is not to be required to purchase similar property anew, for he may not be in a condition to do so, and he has lost his property, not by any fault of his own, but by an unjustifiable appropriation of it by another party. On the other hand, his adversary has, without legal right, possessed himself of another's property, and placed himself in a situation where he may possibly real-ize large gains from property thus arbitrarily acquired.

The difficulty lies in fixing the precise period when the value of the property should be estimated. I think it must, in all cases, be a *reasonable time* after the conversion. Even if the evidence is satisfactory that the plaintiff intended to retain the property, I do not think he should be permitted to roam through the entire period between the conversion and the time when the statute of limitations would attach, for the purpose of discovering the highest price at which the property sold in market. This gives to the transaction the color of a mere speculation, and not of a just ascertainment of damages actually sustained. The plaintiff might repossess himself of the article lost, if not restored to him by the act of the offending party within a reasonable time after he has been deprived of it, and this would make him good. The defendant, in default of a restoration of the property or an article of similar quality, should be held to answer for its

value within a reasonable period. To compel him to respond for a succession of years for fluctuations in value, would seem unjust and oppressive.

Where the party, as in this case, holds the property for the purpose of traffic and sale, a reasonable period, according to the course of trade, should be allowed for the purpose of making such sale. "If it be clear upon the evidence that an immediate or speedy sale were contemplated, I think such a fact would contract the limits of this reasonable period.' If it were clear that months were expected to intervene before a sale should take place, I see no objection to extending this reasonable period to a similar length. If the evidence reflected no light on the subject, then a reasonable period would probably be a question of law, or, if some evidence were introduced, might be a mixed question of law and fact.

I am unable to see that, on this question of reasonable time, the judge at the circuit committed any error which the facts in the case enable us to pronounce such, or of which the defendant is in a situation to avail himself. The judge charged — or held, for the trial was before the judge without a jury — that the measure of damages was the difference in price of the wheat at the time of the conversion and a reasonable time afterwards within which to commence the action; and in the light of what has been already said, I think the rule of law is therein well expressed. He further held, that such reasonable period was four months after the time when the wheat, if duly forwarded, would have reached its destination in the city of New York. This is supposed to have been error. By what legal rule are we entitled to pronounce this to be error? What is there in the evidence to show that this was an unreasonable time? The party alleging error must show it — the presumption being in favor of the correctness of the ruling. Is it claimed that the reasonableness of the time depended on the circumstances of the case, and was a question of fact? Then the judge has found the fact against the defendants, and they are remediless. No request was made to find any specific time as the reasonable time, nor objection made to the decision of the question of reasonable

time as a question of fact by the judge, so far as there was a question of fact involved in it. An exception was taken, it is true, to the determination of the judge, that the 29th of November was a proper date to make the valuation of the wheat; but there is no evidence to show that that time was unreasonable, and, therefore, the only question presented is one of law, whether the defendant was liable to have the damages estimated by the price of the wheat at a reasonable time after the conversion.

I have not thought it necessary, after the copious citation and searching analysis of adjudicated cases contained in the opinions delivered on the former argument of this cause, to refer to them again or discuss them in detail. I have referred to the principles which are involved in them, and also to those which pertain to an equitable view of the subject. The result of my reflections and examination of the cases is, that the rule laid down at the trial is sustained by the course of decision on this vexed question.

I am of opinion that the judgment of the court below should be affirmed.

DENIO, Ch. J., DAVIES, WRIGHT, SELDEN and INGRAHAM, JJ., concurred in affirming the judgment; MULLIN, J., for reversal.

Judgment affirmed.