No. 2,282.

THOMAS S. PAGE, APPELLANT, v. JOHN FOWLER et al., RESPONDENTS.

REPLEVIN OF CROPS GROWN AND HARVESTED BY A TRESPASSER. — While the owner may recover for use and occupation, he can in no case be held to be the owner of the crops grown and actually harvested on the land by the defendant while in possession.

JOINT JUDGMENT. — COMMUNITY OF INTEREST. — Where there are several defendants, and no community of interest or ownership in the property is shown by them, a joint judgment in their favor is erroneous.

DAMAGES — MEASURE OF IN ACTIONS FOR RECOVERY OF PERSONAL PROPERTY. — In actions for the recovery of personal property of a fluctuating value, where exemplary damages are not allowed, the correct measure of damages is the highest market value within a reasonable time after the property was taken, with interest from the time such value was estimated.

APPEAL from the District Court of the Fourth District, City and County of San Francisco.

The facts are stated in the opinion.

(T.)

*Wm. H. Patterson,* for Appellant.

*First*—The record of the suit in ejectment, put in evidence by the plaintiff, proved the plaintiff's title to the hay, as the rightful possessor of the land holding under claim of title which was ratified and confirmed.

The judgment in ejectment is not the foundation of his right, but only the evidence of it, and the proof which establishes that the plaintiff was wrongfully disseized of the premises, and who has, by legal forms and remedies, re-established and recovered his rights by an independent action, prosecuted to enforce the same. The record in ejectment shows his rights re-established to the land and its products. (*Halleck* v. *Mixer*, 16 Cal. 574; *Kimball* v. *Lohman*, 31 Cal. 154.)

*Second*—The plaintiff having been wrongfully disseized, his subsequently making re-entry by authority of law, after adjudication of the question of his right, has the legal effect to restore him to all his remedies against the disseizor, as though he never was disseized. (*Dewey* v. *Osborn*, 4 Cowen, 329, and cases cited.)

*Third*—The rule of damage laid down by the Judge on the trial, without qualification, upon the question of damages, is erroneous, and, upon the case made by the proofs, was prejudicial to the plaintiff's rights in that behalf, and the plaintiff's exception thereto is well taken. (*Suydam* v. *Jenkins*, 3 Sandf. 614; *Shotwell* v. *Wendover*, 1 Johns. 65; *Cortelyou* v. *Lansing*, 2 Caine's Cases in Error; *Barrow* v. *Paxton*, 5 Johns. 259; *Gorlick* v. *James*, 12 Johns, 145; *West* v. *Wentworth*, 3 Cowen, 82; *Lamb* v. *Lathrop*, 13 Wend. 95; *Slingerland* v. *Morse*, 8 Johns. 478; *Bank of Buffalo* v. *right*, 22 Wend. 348; *Clark* v. *Pinney*, 7 Cowen, 68 v. *Mathews*, 24 Barb. 295; *Kennedy* v. *Strong*, Smith v. *Griffith*, 3 Hill, 333; *King* v. *Or Andrews* v. *Durant*, 18 N. Y. 496; *Br* Wend. 144; *Boston* v. *Fisk*, 30 N. Y. 16 31 Howard Pr. 411; Sedgwick on Dam long list of authorities; *Scott* v. *Rogers*

*Fourth*—The damages are excessive

*Fifth*—From and after March 3, 1863, the right of the defendants to claim the rights of settlers intending to pre-empt the land was determined against them, and their holding after that time was wrongful as against the plaintiff. (Act of Congress, March 3, 1863.)

*Sixth*—There was no evidence given on the trial entitling the defendants to a *joint* recovery, there being no community of interest, or ownership as tenants in common. On the contrary, each of the defendants were in possession of separate and distinct portions of the land. Each cut and harvested the hay on their respective portions, and in every respect, as to them, they were several, and not joint, owners of the hay.

*William Hayes, M. A. Wheaton* and *G. R. B. Hayes,* for Respondents.

*First*—The land from which the hay was cut being public land, and the defendants (being qualified pre-emptors) having entered into the actual possession of the land with the intention in good faith to pre-empt the same, several months prior to the time they cut the hay, and having continued and being in the actual possession thereof at the time they cut the hay, and proceeding according to the forms of law to perfect and enforce their right of pre-emption, their possession was adverse under claim and color of title in such sense as to preclude the plaintiff from maintaining an action for the hay cut by the defendants from the land so in their possession. (*Page* v. *Fowler,* 28 Cal. 605; *Page* v. *Fowler,* April Term, 1869; *Halleck* v. *Mixer,* 16 Cal. 579; *DeMott* v. ...*erman,* 8 Cow. 221; *Mather* v. *Trinity Church,* 3 Sergt. ...; *Baker* v. *Howell,* 6 Sergt. & R. 476; *Brown* v. *Cald-* ...t. & R. 118; *Harlan* v. *Harlan,* 15 Penn. 513; ...*ns,* 34 N. Y. 363.)

...dgment and findings in the action of eject- ...plaintiff has already recovered from the ...of the use and occupation of the land ...v, and he is, therefore, estopped from ...f the land.

*Third*—When the value of the property converted is fluctuating (as in the case at bar), the party recovering judgment may recover the highest market value, either at the time of the conversion or any time afterwards and before the trial. The instruction given by the Court below as to the measure of damages was, therefore, correct. (*Douglass* v. *Kraft*, 9 Cal. 562; *Hamer* v *Hatheway*, 33 Cal. 117; *Weymouth* v. *C. & N. R. R. Co.* 17 Wis. 550; *Cannon* v. *Folsom*, 2 Iowa, 101; *Kid* v. *Mitchell*, 1 Nott & McCord, 334; *Ewing* v. *Blount*, 20 Ala. 694; *Jenkins* v. *McConico*, 26 Ala. 213; *Wilson* v. *Mathews*, 24 Barb. 296; *Clark* v. *Pinney*, 7 Cow. 685; *Morgan* v. *Gregg*, 46 Barb. 187; *Romaine* v. *Van Allen*, 26 N. Y. 309; *Burt* v. *Dutcher*, 34 N. Y. 396; *West* v. *Pritchard*, 19 Conn. 212; *Musgrave* v. *Benkendorff*, 6 Am. Law Reg. N. S. 433.)

We are aware that quite a number of authorities sustain a different rule, but the question is not an open one in this State. (*Vide Douglass* v. *Kraft*, and *Hamer* v. *Hathaway*, *supra*.)

TEMPLE, J., delivered the opinion of the Court, CROCKETT, J., and SPRAGUE, J., concurring:

The main facts of this case are almost precisely the same as in *Page* v. *Fowler* (28 Cal. 605 and 37 Cal. 100.)

The plaintiff was in possession of about eight hundred acres of land, which had been inclosed for many years, and which he claimed to own under the so-called Suscol grant. In the summer of 1862, while crops put in by plaintiff were still growing upon the land, the defendants entered, claiming one hundred and sixty acres of land each, as pre-emptioners. They built small houses upon their respective claims, where they afterwards lived. They each possessed the requisite qualifications to become pre-emptioners, and each took the necessary steps to enter the lands in the proper land office of the United States. They were unsuccessful, however, in their attempts to pre-empt, and the plaintiff finally recovered a judgment against them for the land. In May, 1863, while they were in possession, and

before the judgment in ejectment, they cut a quantity of hay upon the land, which was taken by the plaintiff by the writ of replevin in this suit.

There is no question that, at the time this action was commenced, the rights of the parties, with reference to the property in controversy, are exactly the same as in the former case of *Page* v. *Fowler*; but before this case was actually tried, plaintiff had recovered a judgment of ejectment against the defendants, and, as he claims, had been put into possession, and he now claims that the rule laid down in the former case cannot apply to this; that the reason why the plaintiff, out of possession, cannot recover against the defendant in the adverse possession, claiming to be the owner, is because the personal action cannot be made the means of trying title; but that he may, under our system, by means of the sixty-fourth section of the Practice Act, commence his action for possession, and also separate actions for rents and profits, and for trespass or waste; and if, at the trial of his action of trespass or waste, he shows his judgment for the recovery of the land, it will be evidence of his right to recover for the trespass or waste, and that, upon the same principle, the plaintiff is entitled to recover in this case. I know of no warrant for this construction of the sixty-fourth section of the Practice Act; but, independently of that, I think the proposition not maintainable upon principle.

It is undoubtedly true, that, at common law, a person who had been ousted from land might, after a recovery and re-entry, maintain his action of trespass for the mesne profits and for waste, for the reason that after re-entry the law supposes he has always been seized and the acts of the defendant were a continuous trespass upon the rightful possession of the plaintiff; but no case has been cited in which this principle has been held to make the owner of the land out of possession, under such circumstances, the owner of the crops grown and actually harvested by the defendant. The very fact that he may recover the rents and profits of the land, shows that he cannot recover the crops; for, as was well said in the case of *Stockwell* v. *Phelps* (34 N. Y. 363), the owner of the land, in such cases, does not recover the value of the crops

raised and harvested, but the value of the use and occupation of the land; and the annual crops of grain and grass, which contain both the value of the use of the land and the labor of the farmer, do not, under such circumstances, belong to the owner of the land. It would be an oppressive rule to require everyone who, after years of litigation perhaps, may be found to have a bad title, to pay the gross value of all the crops he has raised; and it would be an inconvenience to the public if the bad title of the farmer to his land attached to the crops he offered for sale, and rendered it necessary to have an abstract of his title to make it safe to purchase his produce.

Nor do I see that the Act of Congress of March 3, 1863, allowing the right of entry of these lands only to the *bona fide* purchasers under Vallejo, affects the rights of these parties to the hay. If it be admitted that the defendants entered upon the lands in good faith, with the honest intent to pre-empt them, and so held them until March 3, 1863, the same possession continued, with the same character and rights, until they were dispossessed and the plaintiff re-entered. This proposition is established in *Stockwell* v. *Phelps (supra.)*

The case of *Kimball* v. *Lohmas* (31 Cal. 154), seems to modify, somewhat, the doctrine in *Page* v. *Fowler*, although no allusion is made to that case. It was for wood cut upon the land of the plaintiff, which was in the actual possession of the defendant. Mr. Justice Sanderson, in rendering the decision, challenges the reasonableness of the rule in *Halleck* v. *Mixer* (16 Cal. 574)—affirmed in *Page* v. *Fowler*—and says it is of feudal origin, and that, upon authority, it is not easy to say what it is or where it came from, and that there is very little principle involved in it. He says : " The wood in question having been cut from the land of the plaintiff, is as much his property now as before it was cut. By the severance from the freehold, it was changed from real to personal property, but its title was unaffected. So are all the cases. If, then, it is his property, why is he not entitled to an action for it? Why limit his remedy to ejectment and damages ?" He then says that adverse possession is of two

kinds—the one without color of title, and the other under claim of title, founded upon a written instrument, as a conveyance or a decree or judgment of a Court. By the last ought to be understood, perhaps, possession under color of title, or *bona fide* claim of right; for, in the case of *Page* v. *Fowler*, the defendants claimed neither under a written instrument, as a conveyance, nor under a judgment or decree, and yet this Court held their entry and possession as pre-emptors, under the laws of the United States, coupled with the fact that they actually entered, or attempted to enter, the lands in the proper land office, and were then contesting the right of the plaintiff, was a sufficient adverse possession, under the rule in *Halleck* v. *Mixer*. As to actions for timber, or for taking away the substance of the estate itself, the observations in *Kimball* v. *Lohmas* may be just; but so far as they affect the annual crops, at least, I think I have shown there are reasons for the rule which are not derived from the feudal relation or founded upon the over-nice technicalities of the common law, nor yet upon the reason most frequently given for the rule : that title cannot be tried in a mere transitory action. I am not aware, however, that any distinction has ever been made between the two cases. The conclusion in *Kimball* v. *Lohmas* is entirely consistent with the other cases upon the subject, for there the defendant had no title or color of title ; and all the cases show that there must be something more than a mere assertion of title. The Court, in such cases, will look into the case to see if there is in reality a claim of title to try. (*Harlan* v. *Harlan*, 15 Penn. 507.)

It was undoubtedly erroneous to enter a joint judgment against the plaintiff in favor of the defendants. The entire theory of the defendants was opposed to the idea that there could be any community of interest or ownership in the property ; but, as this was an error which does not injure the plaintiff, we would not probably be justified in reversing the judgment on that ground alone.

The only remaining question in the case is as to the rule of damages adopted on the trial. The plaintiff having failed to make out his case, of course the defendants were entitled

to recover the value of the hay taken and disposed of by him. The hay was taken in May, 1863, at which time it was worth, in the condition it was in, from three to five dollars per ton. It was baled at an expense of three dollars per ton, hauled to Benicia at an expense not proven, and from there shipped to San Francisco at an expense of two and one-half dollars per ton. It was sold at San Francisco at twelve and one-half dollars per ton, which is not questioned as being the highest price that could have been obtained for it. The defendants proved that in 1864, which was a year of great scarcity — sometimes called the year of the drought—hay was worth from thirty-eight to forty dollars per ton. At the request of defendants, the Court instructed the jury that, "in assessing the value of the property, they might find the highest market value at any time since the hay was taken by the plaintiff, with interest," etc. Under this instruction, the jury assessed the value of the property according to the price in 1864, and the defendants recovered $25,763 23 for property which, at the time it was taken, was not worth more than $2,500. As the trial was in November, A. D. 1869, under the rule, the value could as well have been estimated by the market price at the time of trial, and, if the value of hay had then been greater than at any previous time after the taking, that course would undoubtedly have been pursued.

When we consider that the object to be attained by this rule is indemnity for loss actually sustained, the result in this case is sufficiently startling. But the rule is claimed to be of universal application, and as to a large class of personal property, to wit: perishable articles, its operation is still more manifestly unjust. If a quantity of fruit — strawberries, for instance—in the season of their greatest abundance, were taken under circumstances which would entitle the owner to indemnity only, and a suit to recover their value were immediately commenced, the trial would not be likely to occur for many months. In the meantime the season of plenty has passed and the fruit bears an extraordinary price. Nevertheless, by this rule, he is permitted to recover the enhanced value which he could never have realized, and this

under the pretense that it is necessary to indemnify him for his actual loss. This is, of course, an extreme case, and may be said to prove only that there should be exceptions to the rule; but I think that the rule is necessarily liable to work injustice in every case. In the cases where it has been enforced it is said to apply only to articles which fluctuate in value. If there is anything which can be said to have a maket value that does not fluctuate, of course it can make no difference when the value is ascertained. This distinction, therefore, might as well be omitted, and the rule applied indiscriminately to all descriptions of personal property. If goods belonging to a merchant and designed for immediate sale were taken, the trial of a suit brought to recover their value might, for reasons well understood by every member of the bar, and in the usual course of things would be postponed for years. The highest price might be ten years after the sale, and yet it would be morally certain that, had the goods not been taken, the owner would have disposed of them within the next few months. It is obvious that the damages in such a case (and the supposed case is the general rule) might be grossly unjust, and have very little reference to the loss actually sustained.

Without the possibility of loss, the owner is allowed the range of the market for many years in which to choose his price, and perhaps realizes enormous profits, in the face of proof to a moral certainty that, had he kept the goods, he would not, and, perhaps, could not have received them. The best possible speculation would be to have one's property taken by a responsible person, and this under a rule which only indemnifies for actual loss, and does not permit speculative or hypothetical damages to be recovered, and in which nothing is exacted as a punishment to the wrong-doer.

The cases of *Douglass* v. *Kraft* (9 Cal. 562) and *Hamer* v. *Hathaway* (33 Cal. 117) are relied upon to support the rule adopted in this case. The first was for the conversion of certain warrants, and the Court say that the plaintiff is entitled to the highest value after the conversion, and base their opinion upon the case of *Mercer* v. *Jones* (3 Camp. 476), where Abbott, C. J., says, in substance, that the jury may,

in their discretion, fix the value at any time after the conversion, and the case of *Castelyou* v. *Lansing*, in which Kent says simply that in trover the rule is not always the value of the goods at the time of the conversion.   In this case no question arose as to the propriety of estimating the value by the market price at an indefinite period after the taking.

In *Hamer* v. *Hathaway* the question was, whether the highest price between the taking and the trial, or the price at the time of the taking, was the rule.   The Court say it is not an open question in this State ; that elsewhere there is a great diversity of opinion as to which is the proper rule ; that it is important to have a settled rule for this State, and they approve that in *Douglass* v. *Kraft*.   In that case, also, as in most cases holding to this rule, the only question discussed was whether the damages must be assessed at the value of the property at the time of the conversion.   The Court held differently, and though no question was raised as to what would be the rule under different circumstances, say "some qualification of the rule may be found necessary where there has been unreasonable delay in bringing suit, or under certain special circumstances, which do not exist in the present case ; but we are content to follow the general rule announced in *Douglas* v. *Kraft*.."

If we leave this State, the cases are exceedingly numerous and very conflicting.   It would be impossible to deduce any consistent rule from them ; and I agree with Mr. Justice RHODES—in *Hamer* v. *Hathaway*—that it is, perhaps, more important to have a fixed rule than that it should be entirely above question upon principle; and the general rule adopted in this State, when properly qualified, commends itself to my mind as founded in justice, and I think the required qualification can be easily derived from the cases by which the rule was established.

In *Suydam* v. *Jenkins* (3 Sandf. 614), Mr. Justice Duer, in an opinion by far the most able and satisfactory I have been able to find upon the subject, reviews all the authorities upon this subject, both English and American, and, as I think, establishes, beyond question, that this doctrine never did prevail in England, and that the cases of *West* v. *Went-*

*worth* (3 Cow. 82) and *Clark* v. *Pinney* (7 Cow. 681) were innovations upon the common law, and were founded upon an entire misapprehension of the English cases they profess to follow. I have carefully verified all the references in those cases, and fully concur with Judge Duer that those cases not only do not establish the proposition, but contain no allusion whatever to the subject. The English rule, so far as I can discover, has always been to leave to the jury, as a matter of discretion, the question as to the time the property shall be valued, except in the case of stocks, when the value at the time of trial was the measure of damages. In the United States, on the other hand, it has always been considered a rule of law, and the jury are allowed no discretion in the matter.

The doctrine is, therefore, as I think, of American origin, and it may be remarked that all the cases concur in admitting that the general rule is that the damages are to be measured by the value of the property at the time it was taken, the doctrine in question being an exception to the rule ; and though the exception has, perhaps, become the rule, it may be well to bear in mind that it originated in an exception made on the ground that, in certain cases (where the market value is fluctuating) the prevailing rule did not do full justice. The exception ought not, therefore, to be carried beyond the purpose for which it was made. That being accomplished, the ordinary rule should prevail. The reason for it must have been that, in the usual course of trade or business, it was likely that the owner would have realized the enhanced value if he had not been deprived of his property. All the cases are upon the ground that otherwise he would not be completely indemnified. It could not have been intended to give him profits it is certain he would not have realized.

The case of *West* v. *Wentworth* (3 Cow. 82) was the first case in which the doctrine is plainly asserted. It is a short case founded upon a misapprehension of the English cases, and the reason of the decision, further than this erroneous citation of authorities, is not discussed at any length. In the case of *Clark* v. *Pinney* (7 Cow. 681) the question was

elaborately discussed, and this case may properly be considered the pioneer case upon the subject. The doctrine of *West* v. *Wentworth* is sustained, but with an important qualification. The Court say : "In such case, therefore, the plaintiff is entitled to the highest price between the day when the delivery should have been made and the day of trial. But where he delays the prosecution of his claim beyond the period which may be considered reasonable, for the purpose of endeavoring to make an amicable arrangement, he must be considered as assenting to the delay, and ought to participate in the hazard of it. In such cases we are inclined to think the rule of damages should be the value of the article at the commencement of the suit."

The case of *Smith* v. *Griffith* (3 Hill, 333) was a case against a common carrier for goods damaged while in the possession of the carrier. This question was discussed, and the rule of damages is laid down as follows: "The law, in regulating the measure of damages, contemplates a range of the entire market, and the average of prices as thus formed through a *reasonable period of time.*"

The phrase "average of prices" is intended as a rule to ascertain what the market price is, and exclude exceptional sales at an extraordinary price, and taken in connection with other portions of the opinion, the extract shows the rule adopted in this case to have been the highest market price within a reasonable time after the property was taken, or should have been delivered. In the case of *Romaine* v. *Van Allen* (26 N. Y. 309) the cases upon this subject are said to be to the effect, that "if the plaintiff, without unnecessary delay, prosecutes his suit, the fluctuations in the price should be exclusively at the hazard of the defendant, and the plaintiff was entitled to the highest price between the day when the delivery should have been made and the day of trial."

In the case of *Wilson* v. *Mathews* (24 Barb. 295), which was an action of trover, the plaintiff was allowed to recover the highest price intermediate the taking and the trial. The Court, in rendering the opinion, remarks : "As no objection was taken on the argument that any delay had intervened, we assume that the plaintiff has not delayed the prosecution

of his claim beyond the period which may be considered reasonable, and that, therefore, the proper rule of damages is the highest value of the property at any time between the day of its conversion and the day of trial.

In the case of *Cannon* v. *Folsom* (2 Iowa, 101) it is said that the rule of damages for not delivering a commodity according to contract, where the price has been paid, is "the highest market price between the day for delivery and the time suit is brought, provided the plaintiff does not unreasonably delay the institution of the suit."

The case of *Scott* v. *Rogers* (31 N. Y. 676) was by a principal against his factors for an unauthorized sale of his property. The Court decided that the sale was unauthorized, and that the measure of damages was the difference between the price for which the wheat was sold and what it was worth a reasonable time after the date within which to commence the action. This ruling was sustained by the Court of Appeals in an extended argument upon this very question. After stating it would be unjust to allow the plaintiff the whole time allowed by the Statute of Limitations, in which to commence his action and the time from the commencement to the trial in addition in which to fix the price, and that the fact that the right of property passes by the judgment can make no difference, Mr. Justice Hogeboom, who delivered the opinion of the Court, says the rule is settled "to allow the plaintiff the highest price prevailing between the time of conversion and a reasonable time afterwards for the commencement of the action. Some of the cases carry the period up to the time of trial of a suit commenced within a reasonable time; as between these two periods, the time of commencing the suit and the time of trial, the rule is somewhat fluctuating. What this reasonable time shall be has never been definitely settled, and may perhaps fluctuate somewhat according to the circumstances of the particular case."

In the case of *Pinkerton* v. *Railroad* (42 N. H. 424), this rule of damages is rejected, and this reason, among others, given for it: "In that large class of cases where the articles to be delivered enter into the common consumption of the

country in the shape of provisions, perishable or otherwise, horses, cattle, raw material, such as wool, cotton, hides, leather, dye stuffs, etc., to hold that the plaintiff might elect as the rule of damages, in all cases, the highest market price between the time fixed for the delivery and the day of trial— which is often many years after the breach—would, in many cases, be grossly unjust and give to the plaintiff an amount of damages disproportionate to the injury. For in most of the cases, had the articles been delivered according to the contract, they would have been sold or consumed during the year, and no probability of reaping any benefit from future increase of prices. So there may be repeated trials of the same cause by review, new trial or otherwise. Shall there be different measure of damages for each trial?"

In every case which I have been able to find, where this view of the subject was discussed at all, some qualification of the rule was insisted upon; and it may be safely affirmed that the unqualified rule laid down in this case has never been recognized as law anywhere—although, of course, there are cases in which the rule has been affirmed without allusion to the qualification; and if the adjudged cases were not so, a rule which would allow one the highest market price for seven or eight years as the measure of damages for conversion of hay—an annual crop, and almost always annually consumed—is too repugnant to our sense of justice and to the purpose the rule was designed to accomplish—indemnity for actual loss—to be allowed to stand, especially when the rule itself is not supported even by a majority of the adjudications upon the subject.

In many of the cases it is said that the plaintiff will be allowed the highest price intermediate the taking and the trial, if the suit has been commenced within a reasonable time and prosecuted without unnecessary delay, and no intimation is made as to what the rule would be if the suit were not commenced within a reasonable time; but it is evident that the question of damages ought to be the same in either case. The time of the commencement of the action or trial would not seem to have any natural or logical connection or

relation to the question of damages ; and the question as to whether a suit was or was not commenced within a reasonable time, would rarely, if ever, depend upon any fact which would affect the indemnity to which the plaintiff is entitled. The reasonable time mentioned in the cases cannot mean a reasonable time within which to commence the action independently of the question of damages. It must mean a time within which it would be reasonable to allow the plaintiff to take the highest market price as the measure of his damages. In other words, the rule deducible from the authorities is, that in cases affecting property of a fluctuating value, where exemplary damages are not allowed, the correct measure of damages is the highest market value within a reasonable time after the property was taken, with interest computed from the time such value was estimated. This is, in effect, the rule established in *Scott* v. *Rogers*, where this precise question was more elaborately discussed than in any other case.

The rule thus stated may be somewhat indefinite, but it is certainly not more so than the rule in the New York cases, which have reference to the commencement of the action or its diligent prosecution ; and the rule thus stated has this advantage, that what is a reasonable time would always be determined with reference to the question of indemnity; and if the old standard of the value at the time of the taking be once departed from, I can think of no rule more definite which would not be arbitrary and liable to work injustice.

What would be a reasonable time within which to allow the injured party the range of the markets to fix the value, must depend in a great measure upon the circumstances of each case. In very many cases, this could easily be fixed by the nature of the article, the use for which it was intended or the usual course of business upon which value depended. The object of allowing this range at all, as I have said, is because the owner might, and perhaps would, have obtained the price, if he had been allowed to retain the property, and the object will control in fixing the limit allowed for estimating the value. When goods are taken from a merchant he should not be allowed a longer period than it would prob-

ably require in the usual course of business to dispose of them, or than it would be reasonable to suppose a business man would expect to hold them for a profit.

As to the annual products of the soil, which are raised for annual consumption, they are almost universally disposed of by the producers within a few months after they are harvested, and, I may say, invariably consumed, or otherwise disposed of before the next harvest; and, in my judgment, a longer period than that ought never to be allowed within which to estimate the damages as to such property, at least without some proof that the property would have been retained.

In this case the property was taken by means of a writ of replevin, and, as the proof establishes, was disposed of shortly after it was taken. We are not called upon to inquire whether a different measure of damages should be adopted where the property has been retained and can be returned in specie. The price fixed was during the year 1864—at what period of the year is not definitely settled by the evidence, though most likely it was after harvest of the hay crop, as the value was proven by one of the defendants, who testifies that he sold hay at that price during that year. At all events, the instruction authorized the jury to estimate the value after that time; and, as it does not appear that they did not do so, the judgment should be reversed, and it is so ordered.

By RHODES, C. J.: I concur in the judgment.

WALLACE, J., being disqualified, did not participate in the decision of this cause.