MINNEAPOLIS TRUST CO. v. MATHER.

(Supreme Court, Appellate Division, Fourth Department. January 5, 1904.)

1. MORTGAGES—ASSIGNMENT AS COLLATERAL—FORECLOSURE—ACCOUNTING.

Defendant placed notes secured by mortgage in plaintiff's hands to collect interest. Afterwards she borrowed money of plaintiff, and assigned the notes and mortgages to it as collateral. Subsequently she instructed it to foreclose, bid in the property for its value, and take judgment against the makers of the notes for any deficiency. It foreclosed; bidding in the property in its own name for the full amount of the notes, interest, and costs, which was more than its value. *Held* that, having bid

more than authorized, plaintiff became liable as a purchaser in its owṇ interest—bound to account to defendant to the extent of the purchasǝ price.

Hiscock and Spring, JJ., dissenting.

Appeal from Judgment on Report of Referee.

Action by the Minneapolis Trust Company against Helen Matheṛ. From a judgment for defendant on the report of a referee, and froṃ an order denying retaxation of costs, plaintiff appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS,. HISCOCK, and STOVER, JJ.

Elon R. Brown, for appellant.
M. H. Merwin, for respondent.

STOVER, J.   This action was brought to recover upon a note foṛ $5,000 and interest, and the sum of $2,298.60 for moneys loaned anḍ advanced.  The defendant does not dispute her indebtedness upoṇ the note, nor for moneys loaned, but seeks an accounting, and setṣ up a counterclaim of $14,000 and interest.   There is very little, iṣ any, dispute as to the facts in the case; the error alleged, however,. being based upon the conclusions of law by the referee.

The defendant is a resident of this state, and the plaintiff is a corporation organized and doing business in the state of Minnesota. In December, 1886, the defendant received from one Whitney, of St. Paul, Minn., several notes, aggregating $20,100, and secured by five several mortgages made by said Whitney upon lands situate in the state of Minnesota.   On the 24th of October, 1889, the defendant left the notes and mortgages above described, and of which she was still the owner, with the plaintiff, for the purpose of collection and remittance to the defendant by the plaintiff.   The interest was collected by the plaintiff and remitted to the defendant down to April, 1891.   On the 18th day of December, 1890, the plaintiff loaned to the defendant $5,000, taking therefor her note for that amount; anḍ on the same day the defendant assigned and transferred to the plaintiff, as collateral security for said notes, the five mortgages above mentioned, together with the notes and obligations therein describeḍ —the assignment being the usual one, by which the defendant constituted the plaintiff her attorney to collect, and take all lawful means for the recovery of, the money and interest—and said assignment was duly recorded in the proper county in the state of Minnesota.   The plaintiff collected at different times interest on the notes of Whitney; the same being paid by two persons, Sumbardo and Horr, who haḍ purchased the property covered by the mortgages, or some part thereof.   In June, 1890, Whitney, the mortgagor of the premises, conveyed the lands covered by the mortgages, together with other lands, to one James Van Dyke, subject to the said mortgages and the notes secured thereby, and which James W. Van Dyke thereby agreed tc pay, according to the respective tenors thereof, as part of the purchase money for the property.   That conveyance was duly recordeḍ.

Sumbardo and Horr having failed to pay the interest on the notes, no interest having been received for some time, and there being a

large amount of unpaid taxes against the property, considerable correspondence was had between the defendant and plaintiff as to the best method of procedure, and with respect to the foreclosure of the mortgages. The defendant was also represented by one Atwater, residing in the city of Minneapolis, and who had various consultations with the plaintiff as to the best manner of proceeding for the purpose of protecting the interests of the defendant. On the 18th of June, 1894, the defendant wrote the plaintiff that she had instructed Atwater to see the plaintiff about the Horr and Sumbardo notes and mortgages—this being the designation generally used for the five Whitney notes and mortgages above mentioned—and asking if something could not be done whereby a judgment for past-due interest, or a lien on some real estate which they might have, could be obtained, and requesting it to give all information to Mr. Atwater, and confer with him as to the best method of procedure. On the 20th of June, 1894, the plaintiff answered this letter of defendant by saying that it thought the course pursued to get all the interest possible out of Sumbardo and Horr, by delaying foreclosure, had been the wisest, and stated that it could foreclose the mortgages and sell the property for one-half or two-thirds of the notes, and get judgment against them for the balance, if the defendant desired; that it did not believe such judgment would be worth much; that it would talk with Mr. Atwater, as suggested. After the 20th of June, 1894, and before the 5th of July, 1894, the said Atwater saw the plaintiff, in the interest of the defendant, and told it there was no other course to pursue, except to proceed to foreclose the mortgages as soon as possible, bid in the property for somewhere near its present value, and take judgment against the makers of the notes for any deficiency there might be. On the 16th day of July, 1894, foreclosure of the five mortgages above mentioned was commenced by plaintiff by the publication of a notice of sale, dated on that date, under the statute of the state of Minnesota. The property described in the mortgages was sold on the 5th day of September, 1894, by the sheriff of Ramsey county, Minn., to the plaintiff, and certificates thereof given to said plaintiff as purchaser; the aggregate bid for the five pieces of property being $24,434.35, and for which sum the premises were sold to the plaintiff; this sum being the full amount which was due upon the notes in question, secured by the respective mortgages given, with the costs of foreclosure of each of said mortgages, respectively. The defendant was not made a party to the foreclosure, and had no notice of the foreclosure until after the same was completed. The land covered by said mortgages at the time of sale was worth about $20,000. The amount due the plaintiff on the note of $5,000 made by the defendant on the day of sale was $5,886.66, and the amount due for services and money advanced at the same date was $812.65; making a total indebtedness of defendant to plaintiff of $6,699.31. No suit was ever commenced on the notes made by said Whitney, nor was any attempt made to collect the same of him; and there is no evidence of any suit being commenced against James W. Van Dyke, nor of any attempt made to collect the amount of said notes from said James W. Van Dyke, grantee in the deed before

mentioned, and who had assumed the payment of said notes and mortgages. The referee found that the plaintiff was negligent in the collection of said collateral notes and mortgages, and in causing the mortgaged premises to be sold at the full amount due on the respective securities, and thus releasing from all liability on the same the said Whitney, the maker of the said notes, and the said Van Dyke, the grantee of said premises, who had assumed the payment of the same.

There is in this case an element of conversion; that is, of placing the property where it cannot be restored to defendant, and where plaintiff has the benefit of its sale. This is quite different from a case in which defendant might disaffirm, and recover her property. Scott v. Rogers, 31 N. Y. 676; Laverty v. Snethen, 68 N. Y. 522, 23 Am. Rep. 184; Comley v. Dazian, 114 N. Y. 161, 21 N. E. 135. Plaintiff, acting for itself, had the right to buy at any price, but its action deprived defendant of all right in the property mortgaged, and all remedies against the makers of the notes. She cannot be restored to her former position, and is left to her accounting with or proceeding against plaintiff as her remedy. The referee found, as a conclusion of law, that there had been a conversion of the Whitney notes and mortgages by the plaintiff, and rendered judgment against the plaintiff in favor of the defendant for the amount of the securities, less the sum of $6,699.31, due from defendant to plaintiff upon her note, and for moneys advanced, together with the interest on said sum from September 5, 1894.

Although the record is a voluminous one, the controlling facts upon which the case may be said to depend are within a narrow compass; and, in order to deduce the proper conclusion, it will be profitable to consider briefly the relations of the parties, and their legal rights and duties.

During the time that the plaintiff held the securities for collection, its duties were clearly that of an agent of the defendant for the purpose of receiving the interest due upon the notes and mortgages, and remitting to the defendant; and, had this been the only relation which the plaintiff had borne to the defendant, the questions now under consideration would, in all probability, never have arisen. But when the loan was made by the plaintiff to the defendant, and it received as collateral security for that loan the mortgages and notes which it had formerly held as agent, a new relation was created, in which the plaintiff had the further right to handle the securities for its own benefit, to the extent of protecting its own interest as pledgee of the property. On the other hand, it owed to defendant the duty of caring for the property to such an extent as not to jeopardize or injure her interest therein, beyond the extent that it might be necessary to conserve and enforce its own interests and rights in the property. And beyond its own interest in the property, it had the further duty to see that the defendant was not injured by its act in reference to the property. Its interest being satisfied out of the property, it was subject to an accounting to the defendant, and any balance remaining after the satisfaction of its claim was held by it in trust for the benefit of the defendant. In either ca-

pacity—whether as agent for the defendant, and acting under its direction, or as a trustee, who was bound to act in good faith in the protection of its own rights, and, in so doing, to not unnecessarily injure the defendant—it was bound to exercise reasonable care and diligence; and if it departed either from the instructions of its principal when acting as agent, or from its duty as trustee when trying to conserve its own interests, it was liable to account for its acts, to the defendant, either as principal or cestui que trust.

The plaintiff, so far as it can be claimed that it was acting under the direction of the defendant, must find its authority in the instructions of Atwater on the 20th of June, 1894. While the finding of the referee is as to the fact as to what occurred, without drawing conclusions, and perhaps the deduction might be made that there was simply a conference, and the conclusion that, in the interests of all of the parties, the course there stated was the best one to pursue, yet, assuming that the statements then made were sufficient to authorize the plaintiff to act as the agent of the defendant at that time, it must be held to have authority only in accord with the instructions there given; and, if it is to be construed as an instruction, that instruction would be to "foreclose the mortgages as soon as possible, bid in the property for somewhere near its present value, and take judgment against the makers of the notes for any deficiency there may be." This certainly could not be construed into an authority to bid in the property for the full amount of the notes, and thereby discharge the maker, and the person who had assumed the payment of the notes as a consideration for his deed. While there can be no adverse criticism upon the plaintiff's action in bidding off the property—for it had the right to make itself the purchaser, and to bid such sum as it saw fit upon such purchase—yet, if it did elect so to do, it must stand upon its rights as a purchaser; and, having exercised its election to become a purchaser, or neglected to follow the instructions of, or agreement with, the defendant, it cannot, after the consummation of the sale and the receipt of the benefits, repudiate that position, and revert to the one of agent of the defendant. It is not upon the plaintiff to make the election, after the deed, as to its position, but, having departed from instructions, and apparently to the detriment of the defendant, the election is in the defendant; and it is the defendant who has the right to say whether the agent who has departed from her instructions, or the trustee who has gone beyond its duty, shall occupy the position of purchaser, or not. It will make but little difference how the transaction may be characterized —whether it be called a conversion, or a departure from authority, under a mistaken idea of the rights of the parties. In either event, the injury to the defendant is the same, and the rule of responsibility is to be applied, rather to the act itself, than to the name which may be given to it.

We conclude that the plaintiff, having the right either to follow the plan suggested at the conference with Atwater, or to act independently and purchase the property itself, and account to the defendant for the proceeds, having elected to purchase the property, and having bid a price in excess of the one suggested or agreed upon,

became liable as a purchaser for its own benefit, and is subject to account to the defendant to the extent of the purchase price. Plaintiff should be adjudged a purchaser for the amount bid, and should account for that purchase price, as though the property had actually been sold for that amount to a third party.

The judgment should be affirmed, with costs.

McLENNAN, P. J., and WILLIAMS, J., concur.

HISCOCK, J. (dissenting). I am unable to concur in the conclusion reached by a majority of my associates that the judgment appealed from should be affirmed. The action was brought by plaintiff to recover against defendant upon a note for $5,000 and interest, and also the sum of $2,298.60 for moneys loaned and advanced. Defendant, not disputing much of her indebtedness upon said claims, sought to hold plaintiff liable for the sum of about $24,000 and interest—being the amount at which, upon the foreclosure of certain mortgages, it had bid in certain real property—and to recover judgment for the balance of said sum, over and above her indebtedness. The referee before whom the case was tried found in favor of her demand; and hence the judgment appealed from, which includes a large amount of interest upon the principal sum found due to defendant. I think such judgment was not authorized either by the pleadings or by the proofs upon the trial, and should be reversed.

Defendant is a resident of this state. Plaintiff, as its name implies, is a corporation organized and doing business in the state of Minnesota. In December, 1886, one Whitney, at St. Paul, in said state, executed and gave to defendant 10 several notes, aggregating $20,100, and executed upon lands situate in said state five several mortgages securing said notes. These securities have become the source of the trouble and present litigation between the parties hereto. Several years before this action was commenced, defendant deposited the same with plaintiff for collection and care. Subsequently she assigned them to it as security for moneys borrowed and already referred to. The lands covered by the mortgages were transferred by Whitney to other parties, who failed to make proper payments upon the notes and to pay taxes. These defaults occasioned much correspondence between defendant and plaintiff and one Atwater, who, as attorney and friend, represented defendant in Minneapolis. Finally it was decided by defendant that it was necessary to have plaintiff foreclose the mortgages. It is claimed in her behalf that the final instructions by her upon this subject were embodied in directions given by Atwater to the plaintiff on or about July 5, 1894. As the exact nature and tenor of these instructions has been made a matter of importance under the defendant's claim, we shall quote them, as repeated in a letter by Atwater to defendant. The former says:

"I have talked over your matters with Mr. Lindley [one of plaintiff's officers] and told him that there was no other course except to proceed to foreclose the Sumbardo [Whitney] mortgages as soon as possible, bid in the property for somewhere near its present value and take a judgment against the makers of the note for any deficiency there might be."

It is disputed by plaintiff that these were the final or controlling directions, but we shall assume for the purposes of this appeal that they were. After receiving them, plaintiff, in whose name the mortgages stood, proceeded to foreclose the same by advertisement, and, upon the sale, claiming to have acted as defendant's representative, bid in the lands for the full amount due upon the notes and mortgages, which was in the neighborhood of $23,000 or $24,000. It was upon this sale that plaintiff did the things upon which has been built up its liability in this case. Defendant's complaint against it rests solely upon the grounds, first, that it bid in the property in its own name; and, second, that it bid the same in at the full amount of indebtedness due, rather than at the actual value of the lands, which is found to have been about $20,000, thereby canceling any claim against those personally responsible upon the notes for the difference between the amount of the indebtedness and the actual value of the property. Of course, the criticism that no proceedings have been taken to secure any personal judgment against the makers of the notes is comprised within the last ground of complaint. There being no deficiency, there was no opportunity for a personal judgment.

Having before our mind these simple and practically undisputed facts, it may be remarked at the outset that it is interesting, if not a trifle perplexing, to note the various theories upon which those stand who have advocated or approved defendant's right to the judgment which she recovered. Her counsel, in her answer, as his theory, alleges:

"That plaintiff, at its own option and volition, without any request or direction of defendant, * * * by its own attorney, * * * caused proceedings for foreclosure; * * * and on such sale [of the premises] said plaintiff bid off and purchased and obtained title to each and all the parcels of land covered by said five mortgages, for its own use and benefit, and * * * has ever since held and now holds title to said lands in its own right absolutely, free and clear from any claim of this defendant therein or thereto, * * * and by said foreclosure sale and purchase * * * all claims, sums, and demands alleged to have been then owing to plaintiff by defendant became and were thereby paid and satisfied."

The learned referee, in his report—especially in findings of fact numbered 31, 32, 35, and 49—disavows this theory, and by controlling inference, at least, finds that plaintiff, in instituting said foreclosure, acted at the request and in the interest of the defendant, and that it "was negligent in the collection of the said collateral notes and mortgages, in causing the mortgaged premises to be sold at the full amount due on their respective securities, and thus releasing from all liability on the same the said Whitney, maker of the said notes, and the said Van Dyke, the grantee of the premises, who had assumed the payment of the same," and then holds, as a matter of law, that "plaintiff, having obtained title to the mortgaged premises, and released the parties who were personally liable, and secured the deeds thereof, has thereby converted the pledged securities," and must account to defendant for the full value thereof. I have no doubt whatever that the referee was correct in refusing to adopt the theory set forth in the defendant's answer, that plaintiff had proceeded of its own volition and upon its own account in foreclosing the mortgages. The

correspondence between the parties establishes beyond any reasonable question whatever that the plaintiff was trying to compel defendant to pay her indebtedness, and that it was the defendant who desired that foreclosure should be instituted for her benefit, as the best method of obtaining something upon her notes and mortgages.

The learned counsel for the respondent, in his elaborate and able brief, has, as it seems to me, thought best not to adopt the views either of the counsel or of the referee. As I study his argument, he does not anywhere seem to seriously claim that plaintiff, as an actual fact, so acted in its own interests, and in intentional hostility to the rights and equities of defendant in these securities, as to have been guilty of a conversion of the same to its own use. Neither does he appear to much urge that this judgment can be sustained upon the finding of negligence made by the referee, but, in the complete analysis of all of his argument, it seems to urge upon our consideration that this judgment for conversion by plaintiff of defendant's securities may be affirmed because the former acted in disregard of its instructions to bid in said lands at their actual value; that, having disregarded these instructions, and caused loss to defendant, in the cancellation of the personal liability of certain parties, it cannot claim any authorization for anything which it has done in the foreclosure of the mortgages, and therefore its acts, being without authority, gave to defendant the right to treat it as a wrongdoer, and the election to charge it, as a purchaser for itself, with the full amount at which it has bid off the property.

By the findings of fact, this court is limited to an affirmance of the judgment upon the ground that plaintiff, acting in behalf of defendant, and being authorized to foreclose these mortgages for her, was negligent, in that it bid in the property for about $24,000 instead of $20,000. That is the interpretation of the facts by which the trial court has arrived at the judgment before us, and this court must be guided and controlled thereby, unless upon this appeal it shall not only disregard the facts found, but also find others in their place.

The first, and, in my mind, apparently insuperable, obstacle to affirming the judgment, is the impossibility of bringing the findings of the referee within the limits of any issue presented by the pleadings. The defendant's answer, setting forth her cause of action against plaintiff, not only in its affirmative allegations already quoted, but by its denials of authority and agency alleged in the complaint, is framed broadly and unequivocally upon the lines that plaintiff, acting as pledgee of the securities, upon its own responsibility and of its own motion foreclosed the same, and bid in the property at a certain price, at and for which it is to be held accountable. This was a perfectly proper and logical attitude to assume towards a pledgee which has foreclosed its securities, and become chargeable with the amount realized on their sale. There is no suggestion of any obligation to defendant in the course of those proceedings by virtue of any relationship of agent or representative, with any resulting liability by reason of negligence or defiance of authority. The action was tried upon those pleadings, without amendment. Nothing occurred in the course of the trial which could fairly apprise the plaintiff of a change

of complaint. The evidence of witnesses was all taken upon commission, and was properly addressed to the issues framed by the pleadings as they stood. It was entirely pertinent for plaintiff, to meet the allegation that it had been acting solely upon its own volition and for its own benefit, to give evidence that it had been acting under and in accordance with defendant's instructions. It was the referee's report, so far as the record discloses, which gave plaintiff its first notice of a liability predicated not upon the claim pleaded, that it had been acting of itself and for itself, but upon the exactly opposite one, that it had been acting for defendant, and that, in the discharge of its duties to her as such, it had conducted itself so negligently that, as matter of law, it had become guilty of conversion. It seems to me that no further statement of the facts in this respect, or argument thereon, is necessary, to demonstrate that the court is confronted with the question whether it will sustain a judgment rendered upon findings and a theory radically at variance with the pleadings.

Of course, unless the error committed by plaintiff in bidding in the property at the full amount, of about $24,000, due upon the securities, rather than at its actual value, of $20,000, and which error was due to negligence, did make the plaintiff a trespasser ab initio, and so guilty of conversion, it is impossible to see how the judgment can be sustained at its present amount in any event. The only damages suffered by defendant as the result of plaintiff's negligent conduct was the loss of personal liability of the makers of the notes for the difference between the actual value of the property and the amount bid, and being about $4,000. It may be urged that this court has power upon this appeal to so amend the pleadings as to conform to the findings, and sustain the judgment. Both the authorities and the rules of fairness to litigants forbid that such an amendment should be made, upholding a judgment upon charges substantially different from those alleged in the findings, and which the parties have never had a chance intelligently to contest. The appellant in this case did not have an opportunity upon the trial to object to such an amendment, because there was nothing to indicate that it was contemplated. Southwick v. First Nat. Bank of Memphis, 84 N. Y. 420.

Passing from this discussion of the pleadings, I come to the consideration upon the merits of the question whether the proofs and findings of fact by the referee, which I must assume to be binding upon the defendant and this court, authorized any such conclusions of law and judgment as was reached. As was stated at the beginning, defendant's judgment ultimately rests upon two acts performed by plaintiff in the foreclosure, as essential elements of its alleged liability to her. These are the bidding in of the property in its own name, and the disregard of instructions, in bidding the full amount due upon the securities, rather than the actual value of the lands. It is to one of these things that the argument for defendant's claim always reverts. In considering them, we must not fail to remember that the referee has, by necessary implication, found that, although plaintiff bid in the property in its own name, it was acting for defendant, and that its overbid was due to negligence, and not to any inten-

tional, willful misconduct. I am unable to appreciate the significance which would be attached to plaintiff's bidding in the real estate in its own name. I am unable to see just what else it could have done. It concededly held the mortgages, upon a perfectly valid and honest assignment, as security for certain indebtedness. It was seeking from defendant payment of that indebtedness. As the evidence and findings abundantly show, she desired and requested the foreclosure. In complying with her wishes, and although acting as her agent and for her benefit, it was not incumbent upon it to disregard or throw away its own interest in the securities. It was necessary to bid in the property in somebody's name. Defendant was a non-resident of the state, and I cannot conceive of any principle which required, or, in the exercise of good management, permitted, the plaintiff to purchase the property in her name, and thus lose its claim in and upon the real estate which thenceforth stood in the place of its mortgages. It is suggested in the prevailing opinion that it elected to become the purchaser of the property, and must stand upon its rights as such. There is nothing in the evidence that indicates that plaintiff ever contemplated anything else than foreclosing the mortgages and bidding in the property for defendant, subject, of course, to its own claims thereon. Under the findings of the referee, there cannot be the slightest doubt, as a question of fact, that plaintiff now holds the title for the defendant.

While the exigencies of sustaining defendant's judgment apparently are deemed to require utilization of the fact of plaintiff's bidding off the premises in its own name, it, perhaps, is to be stated that not so much importance seems to be attached to that as to the other one— that plaintiff bid a higher price than it was authorized to. The learned counsel for the respondent argues, and the prevailing opinion seems to hold, that that amounted to a conversion, which destroyed plaintiff's agency, and made it liable for the full amount of its bid, as having acted for its own interest. This view suggests the general inquiry whether a person acting for another, who discharges his engagement with perfect fidelity down to the final act, and then negligently, but without intentional misconduct, departs from his instructions, not in the general nature and character of the act performed, but only in some detail of its execution, thereby destroys and loses all protection of his original authority, and becomes in effect a wrong-doer, acting upon his own responsibility, and constructively for his own benefit. Applied to the facts of this particular case, the view so urged and adopted suggests the query whether plaintiff, because, in discharging the contemplated duty of selling and bidding off the property, it negligently bid $4,000 too much, has thereby become deprived of all authority from defendant to act in her behalf, and may be treated as a purchaser in its own right, and charged with the entire purchase price of the premises. If this is the rule—that an agent who adheres with fidelity to his instructions as regards the substantial character of the acts which he performs, and the general manner of performance thereof—is to lose the authority and indemnity of his principal, and become personally responsible for all engagements, because through mere negligence he has erred in some detail, it needs

no argument to demonstrate that it will be rigorous and far reaching. Of course, it is elementary that an agent may so depart from his instructions in respect to the substantial character of the acts performed that he will lose the benefit and authority of his original agency, and, in a proper case, become guilty of conversion. But that does not seem to me to be this case. It seems to me that in such a case as this, where the agent has dealt with property in a manner and for a purpose authorized, it would be a harsh and forced doctrine to hold that he has been guilty of unauthorized conduct in respect to his entire act, and of consequent conversion, because the amount merely of the bid which he was empowered to make was too large. It seems to me that it will be more sensible and equitable to regard the agency and authority as continuing, and protecting him from the charge of conversion, leaving the principal the right of appropriate remedy by which to recover such damages as have resulted from the violation of instructions. The principles embodied in this view seem to be fully sustained in Laverty v. Snethen, 68 N. Y. 522, 23 Am. Rep. 184. In that case an agent intrusted with property of his principal parted with it in a way and for a purpose not authorized, and he was held liable for conversion. In the course of its opinion, however, the court says, as pertinent to the present discussion:

"The cases most strongly relied upon by the counsel for the appellant are Dufresne v. Hutchinson, 3 Taunt. 117, and Sarjeant v. Blunt, 16 Johns. 74, holding that a broker or agent is not liable in trover for selling property at a price below instructions. The distinction in the two classes of cases, I apprehend, is that in the latter the broker or agent did nothing with the property but what he was authorized to do. He had a right to sell and deliver the property. He disobeyed instructions as to price, only, and was liable for misconduct, but not for conversion of the property—a distinction which, in a practical sense, may seem technical, but it is founded probably upon the distinction between an unauthorized interference with the property itself and the avails or terms of sale. At all events, the distinction is fully recognized and settled by authority. * * * The result of the authorities is that, if the agent parts with the property in a way or for a purpose not authorized, he is liable for a conversion, but if he parts with it in accordance with his authority, although at a less price, or if he misapplies the avails, or takes inadequate for sufficient security, he is not liable for a conversion of the property, but only in an action on the case for misconduct."

There would seem to be no difference in principle between the case where an agent authorized to sell has sold for too little, and the case where an agent authorized to buy has bid too much.

In Sarjeant v. Blunt, 16 Johns. 74, 75, Judge Spencer, writing in behalf of the court, says:

"If every departure from instructions is to expose a party to an action of conversion, I should consider it as introducing a new rule, which might operate injuriously. There is no need of this refinement. An action on the case is well calculated to redress any injury arising from a breach of instructions. In this case the defendant was authorized to sell the chronometer for a particular price. The complaint is not that he sold, but that he sold it for a less sum, and thus violated his orders. The selling was not a conversion, but selling for a less price was a breach of duty."

While the referee has based his report definitely and solely upon the proposition that plaintiff was guilty of conversion, there seems to be some disposition, if necessary, to abandon this ground, and to

seek to uphold defendant's judgment upon the apparently broader and more general one that plaintiff cannot claim any authority from defendant for bidding in the property, because it disobeyed her instructions as to the amount to be bid. This amounts to the assertion of the principle that an agent cannot claim authority and indemnity from his principal for what he has done if he has in any detail failed or neglected to follow his instructions. It is difficult to see how the assertion of defendant's right to recover in this form differs materially from a statement of her right based upon an alleged conversion, or how it avoids the principle enunciated in the cases referred to. If plaintiff, being authorized to sell, would not have been guilty of a conversion, because parting with the property intrusted to it for a less sum than was authorized, I fail to see how the agency of plaintiff, authorized to bid in property, can be repudiated because it has erroneously bid more than it was instructed to. If it would not have been guilty of a conversion in the former case, then in the latter I do not see how defendant can refuse to acknowledge its agency and accept the property which it has bid in for her, whether she bases her right to refuse upon an alleged conversion, or upon a claim more general in form—that she is not bound to recognize an agent which in any respect has departed from its instructions. The mistake which plaintiff made in its bid for the property has not in any respect altered or affected the results of the substantial act which it was authorized to perform in bidding the property in for the defendant. As her agent, it bid in the property for her, just as it was authorized to do. The only result of its overbid has been to destroy a possible incidental and collateral right to pursue the makers of the note to a deficiency judgment. Her loss, if any, in this regard, can be easily and adequately compensated for, as suggested in the cases already cited, by an action or counterclaim against her agent for a breach of duty.

Something is said in behalf of defendant, that there is in this case an element of conversion, in that the property has been placed where it cannot be restored to defendant, and that plaintiff's action in bidding in the property deprived her of all right in the mortgaged property, and of all remedies against the makers of the notes, and that she cannot be restored to her former position. Of course, if this means that defendant could not have her mortgages foreclosed, and at the same time retain them, the proposition must be conceded. Otherwise, and outside of a loss of the right to recover a judgment for deficiency for $4,000, which has been fully discussed, I fail to see how the defendant has lost any rights in her property, or has been placed in any different position than was to be anticipated. Her mortgages, by the process of foreclosure, have necessarily been exchanged into real estate, to which, under the findings of the referee in this case, the plaintiff now holds title as her agent.

In addition to the main questions involved upon this appeal, various exceptions to rulings made by the referee upon the trial are urged upon our attention, and there is at least one which seems to deserve attention. Upon the examination of one Lindley, who was one of plaintiff's witnesses, and also one of its officials having charge

of defendant's matters, an effort was made by plaintiff to show that before the foreclosure, through commercial agencies and otherwise, he made an investigation as to the financial responsibility of one Whitney, who was the maker of the notes secured by the mortgages, and learned that he had no financial responsibility. This evidence was apparently offered for the purpose of explaining and excusing plaintiff's conduct in bidding the property in at the full amount of the securities, and thus releasing Whitney. It was ruled out by the referee as irresponsive, incompetent, and hearsay. So far as the first ground is concerned, it is to be borne in mind that this evidence was sought upon interrogatories, where less strict rules prevail as to the technical forms of questions and answers than upon the oral examination of a witness present in court. So far as the other grounds are concerned, they were probably tenable upon the issues presented by the pleadings; but if it is to be held that it was proper, irrespective of the pleadings, to incorporate into this case negligence as a ground of plaintiff's liability, then, certainly, this evidence was competent. It then became proper for plaintiff to introduce evidence not only that Whitney was financially irresponsible, but also evidence which, though falling short of establishing this as a matter of fact, did go to the extent of showing that it had investigated his responsibility, and had been informed that he was irresponsible, as an excuse for not procuring a personal judgment against him, and as bearing upon the question whether it was negligent or not.

For the various reasons discussed, I think that the judgment should be reversed, and a new trial granted.

SPRING, J., concurs.